*To Be Argued by Michael H. Sussman*

# 24-858

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

--------------------------------------------------------

DAN GIURCA,

*Plaintiff-Appellant,*

v.

MONTEFIORE HEALTH SYSTEM, INC., M.D. JEFFREY WEISS, M.D.
CLAUSE VON SCHORN, M.D. GARY ISHKANIAN,

*Defendants-Appellees.*

--------------------------------------------------------

**On Appeal from an Order and Judgment of the
United States District Court for the Southern District of New York**

---

## APPELLANT'S BRIEF-IN-CHIEF

---

SUSSMAN & GOLDMAN
*Attorneys for Plaintiff-Appellant*
1 Railroad Avenue, Suite 3
P.O. Box 1005
Goshen, New York 10924
(845) 294-3991 [Tel.]
(845) 294-1623 [Fax]
sussman1@sussman.law

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................ ii

PRELIMINARY STATEMENT ...................................................1

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION .....1

STATEMENT OF ISSUES PRESENTED............................................2

STATEMENT OF THE CASE....................................................2

STATEMENT OF FACTS ........................................................3

OPINIONS BELOW ...............................................................12

SUMMARY OF ARGUMENT .................................................16

ARGUMENT .......................................................................16

CONCLUSION ....................................................................25

CERTIFICATE OF COMPLIANCE.............................................27

<u>**TABLE OF AUTHORITIES**</u>

<u>**Cases**</u>

*Duka v. Alliance Tri-State Constr., Inc.*,
  U.S. Dist. LEXIS 186975 (S.D.N.Y. Sept. 29, 2021) ...................................19

*Gleason v. Jandrucko*,
  860 F.2d 556 (2d Cir. 1988) ...................................................................16, 17

*Kupferman v. Consol. Research & Mktg. Corp.*,
  459 F.2d 1072 (2d Cir. 1972) .........................................................................18

*LinkCo. Inc. v. Akikusa*,
  615 F.Supp.2d 130 (S.D.N.Y. 2009) ..............................................................23

*LinkCo. Inc. v. Akikusa*,
  367 F.App'x. 180 (2d Cir. 2010)......................................................................23

*McMunn v. Memorial Sloan-Kettering Cancer Ctr.*,
  191 F.Supp.2d 440 (S.D.N.Y. 2002) ..............................................................20

<u>**Statutes**</u>

28 U.S.C. § 1291 ......................................................................................................2

28 U.S.C. § 1331 ......................................................................................................1

28 U.S.C. § 1367 ......................................................................................................1

31 U.S.C. § 3730 ......................................................................................................1

<u>**Federal Rules**</u>

Fed. R. App. P. 4(a)(1)(A) .....................................................................................1

Fed. R. App. P. 4 .....................................................................................................2

Fed. R. Civ. P. 60(b)(3)............................................................................................7

Fed. R. Civ. P. 60(b)(6).........................................................................11

Fed. R. Civ. P. 60(d)(3).......................................................1, 11, 15, 18

Fed. R. Civ. P. 72(b)(2).........................................................................13

## PRELIMINARY STATEMENT

This appeal derives from Appellant's ongoing effort to rectify discovery gamesmanship, which significantly influenced his "voluntary dismissal" of this matter and the integrity of the judicial process. A psychiatrist, Appellant Dan Giurca complained that Appellees wrongfully terminated him and then defamed him by circulating a security alert that branded him in an untrue and damaging light. When Appellant sought discovery, which confirmed that Appellee Hospital so acted, its lawyers claimed that there was no responsive discovery when, as Appellant later learned through discovery in another case, Appellee's agents had created and circulated highly responsive writings. As disclosure of these would have plainly altered the course of the litigation and vindicated Appellant's claims, he has repeatedly sought relief from the judgment entered dismissing this case.

While concluding that Appellees did conceal critical information, the district court found its conduct insufficient to trigger the relevant provision of Rule 60 and denied Appellant the relief he sought. This appeal follows.

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

As Appellants' federal claims arise under the 31 U.S.C. § 3730, and his state claims arose out the same nucleus of operative facts, the district court below had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. Pursuant to Fed. R. Civ. P. 60(d)(3), Appellant filed a motion to vacate the Stipulation of Dismissal

1

entered in the matter on August 25, 2020. The district court denied that motion by an Opinion and Order entered on March 20, 2024. On March 4, 2024, the district court entered its Opinion and Order dismissing the action, and, on March 21, 2024, Appellants timely filed their notice of appeal. The district court entered the judgment on March 22, 2024. Appellant timely filed his notice of appeal on April 3, 2024, and this Court has appellate jurisdiction under 28 U.S.C. § 1291. *See also* Fed. R. App. P. 4.

## STATEMENT OF ISSUES PRESENTED

1. Whether the district court erred in failing to vacate the Stipulation of Dismissal pursuant to Fed. R. Civ. P. 60(d)(3)?

## STATEMENT OF THE CASE

Appellant, Dr. Dan Giurca, commenced this case on December 10, 2018. By his Amended Complaint dated April 5, 2019, he asserted causes of action against Appellees under the federal and state False Claims Acts, Section 741 of New York Labor Law. He also claimed that Appellees defamed him, intentionally and/or negligently inflicted emotional distress and tortiously interfered with his contract and with future business relationships (JA-26-31).

During the latter stage of discovery, on August 25, 2020, Appellant dismissed the case. On June 21, 2023, through new counsel, Appellant sought leave to file a motion pursuant to Rule 60 to vacate this dismissal. On July 6, 2023, Magistrate

2

Judge Moses granted Appellant leave to file for vacatur. After the parties briefed relevant issues, on December 21, 2023, Magistrate Judge Moses recommended the denial of Appellant's motion. Appellant objected to her Honor's report, which the district court adopted on March 20, 2024. Appellant timely noticed his appeal which he now perfects

## STATEMENT OF FACTS

In his Amended Complaint, Appellant alleged that Montefiore Health System and three of its leaders [Dr. Weiss, Dr. von Schorn and Dr. Ishkanian] unlawfully retaliated against him after he reported patient abuse and Medicaid and Medicare billing fraud in violation of Federal False Claims Act, the State False Claims Act, and Section 741 of the New York Labor Law. He also claimed that defendants defamed him and tortiously interfered with his contractual relations (JA-1-32).

The operative Amended Complaint is quite detailed and provides numerous instances of alleged fraud and misconduct on the part of Appellant's peers and supervisors, as well as his efforts to report this both internally and beyond (*Id.*). Indeed, between August 11 and September 29, 2016, Appellant submitted five letters to the New York State Office of Mental Health with detailed complaints of patient neglect by other psychiatrists employed by Montefiore (JA-186-190). In October 2016, OMH conducted an "intense" site inspection at Montefiore Mount Vernon and focused on the issues Dr. Giurca had raised (JA-182-83). In June 2017, the NYS

Department of Health thanked Appellant for his complaints about patient care and safety issues and advised him of deficiencies found during the site inspection and audit (JA-192-93).

In July 2020, through counsel, Appellant sought production of the inspection report prepared by New York State, submitting that "The DOH inspectors' findings, particularly as to the Psychiatry Department are probative on the issue of Defendant's knowledge of Dr. Giurca's protected whistleblowing activities. The inspection itself and its findings are also probative on the element of Dr. Giurca's retaliation complaint that he had a reasonable belief that Defendants were violating the federal and state False Claims Acts and that Dr. Giurca's retaliation claim for whistleblowing involved patient care under New York State Labor law" (JA-202).

Defendants steadfastly objected to production of this report, arguing that nothing in the report identified Appellant as the whistleblower and that it strains credulity to believe that this report could have motivated Appellees' adverse action (JA-207-09). On July 29, 2020, the Magistrate Judge agreed and denied Appellant's request to produce the report (JA-227-231).

In paragraph 73 of the Amended Complaint, Dr. Giurca alleged that Montefiore maintained a blacklist of individuals, who it barred from its facility, and further averred that Dr. Rojas, the Director of Psychiatry at the Orange Regional Medical Center ("ORMC"), told him that he had seen Appellant's photograph on the

wall in the Montefiore Wakefield Hospital security office identifying him as a security risk. Appellant alleged that by posting this flyer in a conspicuous place, Appellees injured his reputation and inspired his termination from ORMC (JA-25).

During discovery, Montefiore sought to prevent Appellant from accessing pertinent records, including those of patients, production of which could support his claims of patient abuse and his argument that his disclosures were made in good faith (JA-106-08 [recognizing that Appellant sought records "to show he had a reasonable good faith belief that defendants were committing fraud and to question the care provided by other physicians."]). Even after the parties reached an apparent agreement on the provision of pertinent patient records (JA-111-124), Appellees continued to withhold them (JA-121-124). Appellant's prior counsel noted the failure to produce specific relevant documents in correspondence with the Magistrate Judge (JA-123-24).

Through 2020, Appellant sought discovery and Appellees objected or failed to provide documents that Magistrate Judge Moses ordered produced (JA-184). Likewise, and as most directly relevant to this appeal, Appellees failed to provide Appellant with information relating to the production and circulation of the defamatory security alert (JA-360). While they represented to the court that Appellant had voluntarily resigned from the hospital's employ, the security alert identified Dr. Giurca as a "terminated associate" (*Cf.* JA-274 [counsel representing

to court that Dr. Giurca "voluntarily resigned his employment at Montefiore] with JA-360). Appellant alleged that this derogatory alert derived from nothing more than retaliatory animus, sparked by his complaints to the state regulatory authority about Appellees' mistreatment of mentally ill patients.

In the meanwhile, as they vigorously sought to withhold production, Appellees as strenuously attacked Appellant and his counsel for their acknowledged failure to produce all audio recordings Appellant had made of Appellee's agents (JA-227-275). On August 12, 2020, the Magistrate Judge ordered, *inter alia*, a forensic audit of appellant's electronic devices to ensure that Appellant had produced all material relevant to Appellees' discovery demands and ordered Appellant and his counsel to pay attorneys' fees relating to Appellees' efforts to obtain all relevant discovery, as well as those incurred in re-deposing Appellant (JA-276-278). The court set August 28, 2020 as the deadline for Appellant's submission of any additional discovery yielded through the forensic audit.

On August 25, 2020, Appellant signed a Stipulation of Dismissal with Prejudice of this matter and waived "all rights of appeal" (JA-279-80). He claims that his former counsel told him he would withdraw from the case as he saw no path forward.

On September 9 and 15, 2020, Appellant wrote two letters to the Magistrate Judge raising concerns that Appellees had engaged in "highly unethical conduct"

and seeking the court's assistance. The Magistrate Judge declined to docket the letters and forwarded them to counsel Sadowski (JA-287-88).

On March 5, 2021, Michel Meth, Esq. wrote to Judge Ramos seeking permission to file a motion to vacate the dismissal of the case and explaining some of the circumstances that caused Appellant to sign the Stipulation of Dismissal (JA-289-91). On March 10, 2021, Appellees' counsel objected to Mr. Meth's request, noting that to prevail on a Rule 60(b)(3) motion alleging fraud by an opposing party, he "must show that the conduct complained of prevented the moving party from fully and fairly presenting his case" (JA-293). Clear and convincing evidence of material misrepresentations is required to justify grant of such a motion, Appellees then argued (*Id.*). Instead, Appellees' counsel submitted, they had honored every directive to produce discovery entered by the Magistrate Judge (JA-294). Only "two elusive" billing records had not been produced by Appellees as of August 12, 2020, they contended, citing Sadowski's statement to the court on that date (JA-294).

On April 6, 2021, Magistrate Judge Moses granted Mr. Meth leave to file a motion to vacate pursuant to Fed. R. Civ. P. 60(b)(3) focused on "fraud . . . misrepresentation, or misconduct by the opposing party" by May 3, 2021, and set out a briefing schedule for further proceedings (JA-296-97). Meth timely filed his papers, which focused on alleged lies by Appellees' counsel and witnesses and how these placed Appellant in a poor light with the district court, ultimately causing him

7

to agree to dismiss his case with prejudice (JA-312-342).  This motion did not focus on Appellees' failure to produce documents and things relating to the development of and distribution of the security alert (*Id.*).

On May 24, 2021, Appellees sent a Rule 11 letter to Mr. Meth, who then withdrew the Rule 60 motion (JA-1400-1401).

Starting in 2021, discovery proceeded in Appellant's separate litigation against ORMC. Through this process, Appellant learned that Appellee hospital's communication about the security alert with ORMC agents had been withheld from him during this litigation.

On June 20, 2023, through new counsel, Appellant requested leave to move to set aside the Stipulation of Dismissal, contending that Appellees' counsel deliberately concealed material evidence regarding the core issues of the case – defamation and retaliation for whistleblower activity.  In support of this request, Appellant's counsel submitted that the bulk of the evidence supporting the proposed motion had been recently obtained and contradicted Appellees' claim that it had not disseminated deprecatory information about Appellant outside of its four doors. Specifically, counsel explained that Appellant learned that Montefiore's Director of Security had circulated a "security alert" to all hospitals within Montefiore's network [more than 100 security offices] (JA-1434, JA-1476), and that one of its

8

security officers transmitted the alert to Dr. Cesar Rojas, then head of psychiatry at ORMC (JA-1404, JA-1406, JA-1408).

As critically to Appellant's retaliation claim, Montefiore's Director of Security told his counterpart at ORMC, Miguel Rodrigues, that the security alert was created because Dr. Giurca "wrote a letter threatening to expose the way the hospital treats their psych patients and working conditions. They didn't renew his 90-day contract and only let security know as a term employee" (JA-1408, JA-1440). Rodrigues sought to confirm the authenticity of the security alert with Trotta, Montefiore's Director of Security (JA-1442, JA-1446-1450, JA-1468). To do this, Rodrigues emailed the screenshot of the security alert to Trotta, but appellees never provided this communication, or Trotta's response.

During discovery in this case, Appellant had sought documents showing the dissemination of the security alert. Appellees did not produce the documents within their client's possession (JA-1414). While they did produce the security alert, they did not provide evidence in their client's possession showing that the hospital system's agents transmitted the document outside its four walls and communicated with persons at another hospital system concerning the security alert (JA-1404).

When they dismissed this case, Appellant and his lawyer, Robert Sadowski, Esq., had no knowledge of the concealed Rodrigues-Trotta email, the Trotta emails to more than 100 security officers, and the investigation started by Trotta about the

9

leaked photo to ORMC. Montefiore and its lawyers concealed the central role that Director of Security Trotta played, the date when the security alert was created, the reason for its creation and the scope of its dissemination as well as Trotta's communication to third parties, specifically ORMC, confirming the alert and explaining its rationale.

In response to Appellant's letter of June 20, 2023, Appellees did not address the specific and detailed allegations set forth therein. Rather, by theirs of June 28, 2023, Appellees' counsel accused Appellant and his new counsel of "mudslinging" and argued that since the premise of the Rule 60 motion fell within sub-divisions (2) and (3) of the Rule, they could not premise a Rule 60(b)(6) motion and that Appellant had failed to adduce extraordinary circumstances of the sort needed to trigger application of the latter sub-section (JA-1482-83).

Appellant responded on July 4, 2023, explicating the import of the concealed discovery (JA-1485-89), and explaining, "Here, Trotta suffered an injury which deprived plaintiff the chance to depose him until January 2023. During his deposition, Trotta confirmed that he had circulated the security alert to numerous Montefiore sites and had substantive contact concerning that security alert with Miguel Rodrigues, the Director of Security for Orange Regional Medical Center [ORMC], confirmed the security alert to Mr. Rodrigues and advised him that the

basis for the security alert was plaintiff's disclosure of patient abuse, nothing more nor less" (JA-1487).

In his response, Appellant also reiterated that "Montefiore produced exactly one document about the security alert though additional communications in its custody and control and later made available show that its agents did distribute and discuss that defamatory and retaliatory alert with third parties, including, as more relevant ORMC agents and that these agents did rely upon this information in eventually terminating plaintiff. Plaintiff only learned about the scope of this communication within the last five months" (*Id.*).

By order dated July 6, 2023, the Magistrate Judge permitted Appellant to make his motion pursuant to Fed. R. Civ. P. 60(b)(6) and/or 60(d)(3), which are not subject to the one-year limitations bar (JA-1492). The court noted the heavy burden on a plaintiff seeking to vacate an agreed upon disposition, the need to show extraordinary circumstances justifying relief and the inapplicability of clauses (1)-(5) of Rule 60 to the instant situation. Likewise, the court noted that Rule 60(d)(3) required a showing of fraud upon the court itself by officers of the court not merely perjury by an adversary's witnesses or third-party witnesses (JA-1494).

In response to the court's order, plaintiff refiled his June 20, 2023 letter with exhibits (JA-1497-1624), and on July 21, 2023, submitted that Rule 60(d)(3) applied because, as the Magistrate Judge chastised plaintiff for withholding discoverable

material in August 2020, Appellees' counsel and client were doing the same thing (JA-1634). This conduct, Appellant submitted, rendered plaintiff unable to establish that defendant had engaged in the publication of the defamatory information outside of its network, when, in fact, it had done so and this would have been established through the withheld discovery. "Plaintiff's claims were not viable in light of then available evidence but now are viable" (*Id.*).

By withholding information vindicating appellant's claim while threatening him with Rule 11 sanctions, "the defendant represented the frivolous nature of plaintiff's claim when it had reason to know that its client had information in its file which supported plaintiff's claim" (JA-1635).

Appellees responded that showing fraud upon another party is distinct from showing fraud upon the court and that, at most, Appellant demonstrated the former (JA-1636-37). In its response, Appellees continued to ignore the communication between Rodrigues and Trotta and Trotta's confirmation to Rodrigues that Appellant was placed on security alert because of his whistleblowing activity (JA-1636-1639).

## OPINIONS BELOW

On December 21, 2023, the Magistrate Judge recommended denial of Appellant's motion for vacatur of the Stipulation of Dismissal. While concluding that Appellees should have produced Trotta's communication with Rodrigues and without condoning their failure to do so (JA-1684), Her Honor held that Appellant

failed to produce clear and convincing evidence that counsel engaged in sufficient misconduct to trigger application of Fed. R. Civ. P. 60(d)(3) (JA-1684-85).

Magistrate Judge Moses noted that much of the evidence Appellant submitted related to witnesses not under Montefiore's control and that some of the documents upon which Appellant relied were created by ORMC agents and not within Montefiore's possession. The Magistrate Judge did not address Appellant's claim that, had Montefiore timely produced what it should have, Dr. Giurca and his counsel would have known of Trotta's pivotal involvement in the dissemination of the flyer and been able to develop evidence [as occurred later in the ORMC case] as to the breadth of communications between Montefiore and ORMC and thereby sustain his defamation and retaliation claims in a manner he could not absent the withheld discovery. Finally, Magistrate Judge Moses criticized Appellant for not using the means available to him in the adversarial process, refused to relieve him of "strategic decisions" he made three years earlier and declined to schedule an evidentiary hearing to explore the nature and extent of withholding Appellees and their counsel engaged in (JA-1685-1686).

Pursuant to Fed. R. Civ. P. 72(b)(2), Appellant timely objected to Magistrate Judge's Report and Recommendation, arguing that approving it would cause a grave miscarriage of justice and implicate the public interest (JA-1688-1702). In support of his objection, Appellant submitted that, even after doing relevant discovery in the

ORMC case, which yielded information and documents Appellees withheld, he still lacked the cover email/document Trotta circulated with the security alert in April 2017 (JA-1691, Point 1), or the concealed communication between Rodriguez and Trotta. Appellant submitted that the timely production of this discovery would have led to him to multiple threads of material evidence and witnesses proving his claim that Montefiore defamed and retaliated against him (JA-1691, Point 3). In addition, during discovery, Montefiore did not produce communication it received from the Department of Health dated March 27, 2017, which threatened the hospital with significant economic loss, and made more imperative its discrediting of the Appellant (JA-1697). Indeed, three days after receiving this letter from DOH, Appellee hospital suspended Appellant and, within ten days, it created the bogus security alert that characterized him falsely as a terminated associate (*Id.*).

On March 20, 2024, the district court adopted the Magistrate Judge's Report and Recommendations (JA-1756-63). Judge Ramos minimized the concealment by Appellees' counsel, focusing on the posting by Trotta of the security alert at Montefiore facilities and Dr. Rojas' observation of the same at Wakefield rather than upon the withheld communications between Trotta and Rodrigues (JA-1757). The district court noted Appellant's March 2021 Rule 60 motion, its withdrawal, and a letter Dr. Giurca wrote shortly thereafter complaining about perjury at depositions. However, at none of these times did Appellant have the information presented in the

instant application. Judge Ramos repeated the Magistrate Judge's reasoning: at worst, Appellees' conduct worked a fraud on a single litigant, not the court, and, His Honor reasoned that this fraud "could not have interfered with the [c]ourt's ability to perform its impartial task of adjudging cases because the [c]ourt was never asked to perform that task" (JA-1759).

Engaging in *de novo* review, Judge Ramos interpreted Appellant's objection to the Magistrate Judge's determination as raising one objection – that Magistrate Judge Moses had trivialized the significance of the fact that Montefiore's counsel represented to the court on August 12, 2020, that her client had produced all relevant documents even though the email had not been produced (JA-1760). Judge Ramos concluded that a single instance of perjury is insufficient as a matter of law to satisfy the standard used in applying Fed. R. Civ. P. 60(d)(3) in assessing "fraud on the court."

His Honor also held that Appellant had not proven that Appellees intentionally withheld the documents and thereby failed to adduce clear and convincing evidence of fraud upon the court. Even if the failure to produce was advertent, Appellant did not show that the failure was sustained or part of a lengthy pattern of misbehavior necessary for a finding of fraud on the court (JA. 1762). Finally, if the withholding was intentional and itself sufficient to invoke Rule 60(d)(3), Judge Ramos held that

15

Appellant's voluntary dismissal of his case shows that appellees' misconduct merely affected him, "rather than any court action" (JA-1763).

Appellant timely noticed his appeal (JA-1764).

## SUMMARY OF ARGUMENT

The district court erred in adopting the Report and Recommendation because Appellees' counsel did engage in fraud on the court, and this affected materially the integrity and outcome of the case. This Court's precedent recognizes that while witness perjury, client conduct and the failure to comply with discovery demands are insufficient to satisfy Rule 60(d)(3), representations by an officer of the court which do substantially impact the course of litigation can satisfy the standard. This is such an instance.

## ARGUMENT

In *Gleason v. Jandrucko*, this Court held,

> As we previously have made clear, the credibility and veracity of a witness at issue in an original proceeding cannot be later challenged by way of an independent action. *See Serzysko*, 461 F.2d at 702 n. 2; *see also Travelers Indemnity Co. v. Gore*, 761 F.2d 1549, 1552 (11th Cir. 1985). After-discovered evidence of alleged perjury by a witness is simply not sufficient for a finding of "fraud upon the court." *Hazel-Atlas*, 322 U.S. at 245, 64 S.Ct. at 1001; *Serzysko*, 461 F.2d at 702. Similarly, allegations of nondisclosure during pretrial discovery do not constitute grounds for an independent action under Fed. R. Civ. P. 60(b). *See H.K. Porter Co. v. Goodyear Tire Rubber Co.*, 536 F.2d 1115, 1118 (6th Cir. 1976). Absent the type of fraud which "subvert[s] the integrity of

the court itself, or is . . . perpetrated by officers of the court," 7 Moore ¶ 60.33, at 360; *see Serzysko*, 461 F.2d at 702, the requisite interference with the judicial machinery cannot be established and an independent action for fraud on the court therefore will not lie. In short, neither perjury nor nondisclosure, by itself, amounts to anything more than fraud involving injury to a single litigant. *Cf. Hazel-Atlas*, 322 U.S. at 246, 64 S.Ct. at 1001; *Great Coastal Express, Inc. v. International Brotherhood of Teamsters*, 675 F.2d 1349, 1357 (4th Cir. 1982) ("[p]erjury and fabricated evidence are evils that can and should be exposed at trial, and the legal system encourages and expects litigants to root them out as early as possible"), cert. denied, 459 U.S. 1128, 103 S.Ct. 764, 74 L.Ed.2d 978 (1983) (emphases added).

860 F.2d 556, 559 (2d Cir. 1988).

As applied in *Gleason*, vacatur of a stipulation of settlement was not warranted because, "[W]hile the officers may have lied at their depositions, nothing prevented plaintiff during the pendency of the prior proceeding from deposing the two eyewitnesses to the bank robbery in order to impeach the officers' testimony. Instead, however, Gleason voluntarily chose to settle the action." *Id.* at 559.

Here, counsel concealed almost all discoverable information concerning the security alert, including its author and distribution both inside and outside the hospital network. Unlike *Gleason*, where plaintiff knew the identity of the critical eyewitnesses and could have deposed them to undermine the credibility of the official account of the plaintiff's arrest, here Appellees and their counsel concealed

all of this information and misrepresented their compliance with discovery obligations to the court.

"While an attorney 'should represent his client with singular loyalty that loyalty obviously does not demand that he act dishonestly or fraudulently; on the contrary his loyalty to the court, as an officer thereof, demands integrity and honest dealing with the court. And when he departs from that standard in the conduct of a case he perpetrates a fraud upon the court." 7 Moore, supra, at 513 (footnote omitted)." *Id.* at 1078.

The use of Rule 60(d)(3) is fully warranted here because, through its counsel, Montefiore concealed from Appellant and the court the course of conduct by its agents which supported Dr. Giurca's central claims against it. This alone distinguishes our case from *Kupferman v. Consol. Research & Mktg. Corp.*, 459 F.2d 1072, 1078-81 (2d Cir. 1972).

Appellant satisfies the "extraordinary circumstances" and "highly convincing evidence" standards used to adjudicate Rule 60 motions. Here, Trotta's unavailability deprived plaintiff of the chance to depose him until January 2023. Whether Appellee's counsel [Gambardella] intentionally delayed Mr. Trotta's testimony or not, the fact remains that he was first produced for deposition in January 2023 and that, during discovery in this case, Montefiore produced exactly one document about the security alert, though additional communications in its custody

18

and control and later made available show that its agents did distribute and discuss that defamatory and retaliatory alert with third parties, including, as most relevant, ORMC agents, and that these agents did rely upon this information in eventually terminating plaintiff.

During his deposition, Trotta confirmed that he had circulated the security alert to numerous Montefiore sites and had substantive contact concerning that security alert with Miguel Rodrigues, the Director of Security at ORMC, confirmed the security alert to Mr. Rodrigues and advised him that the basis for the security alert was Appellant's disclosure of patient abuse, nothing more nor less. This information was central to Appellant's merits case and Appellees' counsel withheld from Appellant anything about the security alert, including who drafted it, who distributed, and to whom it was distributed, both within the Montefiore network and beyond. And Appellees' counsel represented to Appellant's counsel and the court that documents relating to these issues never existed. This was false and a reasonable factfinder could infer that this was done intentionally because disclosure of the actual events would have provided evidentiary support for Appellant's central claim.

Nor is the wrongdoing confined to a single alleged action. *Cf., Duka v. Alliance Tri-State Constr., Inc.*, 20-cv-6648, 2021 U.S. Dist. LEXIS 186975, at *1011 (S.D.N.Y. Sept. 29, 2021). Appellees' counsel represented that they had provided all documents within their possession on several occasions when

Appellant's counsel sought additional discovery. She made the same representation to the court in writing and orally. Yet, she apparently either never conferred with her client's Director of Security or, if she did, never provided what he had in his files concerning the matter in dispute or chose not to share the same and pretend the relevant discoverable material did not exist. Nor did the concealment relate to a single document, but rather included the failure to identify the Director of Security or provide any documents he wrote or received pertaining to the security alert and "termination" of Appellant while, all the while, she represented that Appellant voluntarily resigned from Montefiore.

Nor did Appellant "choose the outcome himself," as Appellees argued below; what is crystal clear is that he was forced to choose this outcome because of the concealed discovery, which caused his counsel to advise him in August 2020 that he would not continue to litigate against Montefiore because no evidence supported the retaliation or defamation claims against it. It is now clear that nothing was further from the truth, though Sadowski did not know this at the time. Neither he nor Appellant then knew the relevant information because of the fraud that defendant and its lawyers perpetuated on him and the court both by concealing relevant information and filing a Rule 11 letter, a use of the court process, to further pressure Appellant to relinquish valid claims. Clearly this conduct met the standard the district court cited; it "unfairly hampered the presentation of the opposing party's

claim" (JA-1761 [citing *McMunn v. Memorial Sloan-Kettering Cancer Ctr.*, 191 F.Supp.2d 440, 445 (S.D.N.Y. 2002)]).

In sum, Appellant now can prove both his retaliation and defamation claims as Montefiore terminated him because of his protected speech acts and persons associated with it did distribute the baseless security alert and that alert was instrumental in another employer taking and justifying adverse action against him. None of this is conjecture or speculation or baseless; based on discovery conducted in plaintiff's case against ORMC, it can all be proven.

For this reason, and to avoid manifest injustice or reward Appellees for concealing relevant information, this Court should vacate the district court's opinion and re-open the matter. Montefiore plainly sandbagged Appellant and his then counsel and did not make disclosures which would have been injurious to its juridical interests, and as Appellant eventually did uncover the relevant facts that warranted his initial claims and were concealed from him while the same Appellees' counsel threatened him with Rule 11 sanctions, the matter should be re-opened.

The district court cited four reasons for not reopening the matter. We next address these reasons:

## A. That the fraud was not intentional.

Federal district courts supervise discovery and lawyers make numerous representations to judges and magistrates during that process. In this very case, faced

21

with an allegation that Giurca and his counsel, Sadowski, failed to timely turn over various audio recordings, the Magistrate Judge entered an order requiring a prompt explanation of the failing. The court required the submission of Affidavits attesting to exactly what happened. Sadowski complied. Had Sadowski lied in his Affidavit, this would undoubtedly be a fraud on the court and relevant to the critical judicial role in supervising discovery.

Likewise, during discovery, Appellant sought documents relating to the creation and distribution of the security alert. Defendants provided only the security alert and provided no other relevant documents, including those its Director of Security had showing his communications with third parties about that alert. These communications directly relate to Appellant's central claim of defamation and the spreading of false information, namely that he was a "terminated associate" and, implicitly, had done something so seriously wrong as to be barred from all Montefiore facilities. Appellees never identified the author of the flyer nor provided any email Trotta wrote to 100 security officers when he distributed that document. Appellant still does not have that document.

When questioned as to outstanding discovery, Appellees' counsel misrepresented to the court when she stated that she had turned over all relevant documents. She also misrepresented the same to plaintiff's counsel, deceiving him into a misunderstanding of the strength of his client's case.

These representations caused the court below to have a distorted view of the status of compliance with discovery: Appellant, the Magistrate Judge concluded, had failed to turn over audio recordings he made while Appellees had complied, except for two elusive billing records. But this was *not true*, and Appellees and their counsel were the only ones in a position to know how untrue this depiction was. Contrary to the conclusions reached below, this fraud, perpetuated for a lengthy period of time, must have been intentional or, at the very least, the Magistrate Judge should have held a hearing [as Appellant requested] to assess exactly what happened, why relevant documents were not turned over and why, despite this failure to disclosure, Appellees' counsel had represented to the court that all relevant documents had been disclosed.

Unlike *LinkCo. Inc. v. Akikusa*, 615 F.Supp.2d 130, 137-39 (S.D.N.Y. 2009), *aff'd*. 367 F.App'x. 180 (2d Cir. 2010), where the district court found no basis to conclude that defendant's counsel participated in any fraud on the court, citing Hazel-Atlas Glass Company v. Hartford-Empire Company, 322 U.S. 238, 247 (1944), here the concealment and misrepresentations were made by counsel, an officer of the court, and plainly hampered adversary's capacity to present his claim.

**B. That the fraud did not affect the judicial function.**

Both the Magistrate Judge and Judge Ramos determined that the fraud did not affect the judicial function. Objectively, this conclusion is erroneous. The fraud *did*

inform the order of August 12, 2020, in which the Magistrate Judge counterposed the Appellees' purported compliant conduct with Appellant's failures, using this as a basis for its order and award of sanctions, including attorney fees, in the sum of $47,000.00.  Had the Magistrate Judge understood then the nature of the evidence withholding in which Appellees had engaged, it would never have sanctioned one party, not the other, and placed Appellant in a position where he was forced to abandon this litigation.  Indeed, had he possessed the withheld evidence, he would never have abandoned the litigation.

### C. That there was no pattern of fraud perpetrated on court.

Judge Ramos concluded that to satisfy the "fraud on the court" standard, Appellant has to demonstrate more than single incident.  But the record here shows such a pattern: Appellees' counsel did not produce the required discovery in 2019.  When an issue was raised as to the completeness of their responses, counsel continued to pretend they had complied.  In August 2020, pointing their fingers at Appellant, they painted their own compliance in a deceptive fashion.  In short, for a year, counsel deceived both their adversary and the Magistrate Judge by again claiming they had provided all documents and evidence they had but for two "elusive" billing records.

**D. That this pattern of behavior did not cause plaintiff to abandon the case.**

By withholding evidence which strongly supported his defamation claim and then by exaggerating appellant's non-compliance with his discovery obligations, Appellees influenced the Magistrate judge to enter an order that sanctioned him and his counsel $47,000.00 in attorneys' fees. This never would have occurred had the Magistrate Judge been aware [or been made aware] of the egregious discovery violations Appellees committed. Placed in this position, with his own counsel advising that he could not prevail on his claims due to lack of evidence, Appellant agreed to "voluntarily dismiss" his case. But as he has attested, that dismissal was forced by his counsel's conclusions, themselves influenced by Appellees' discovery chicanery, and those of the Magistrate Judge as reflected in Her Honor's order of August 12, 2020.

In this context, plaintiff's "voluntary dismissal" was not really voluntary at all, and the district court erred in deeming this resolution "fatal" to his Rule 60(d)(3) motion. The court allowed one consequence of the fraud to excuse it.

## CONCLUSION

The Appellees intentionally perverted the discovery process. They withheld more than one document. Indeed, the full extent of their misconduct is not yet known. Unlike the Magistrate Judge's order, which required Appellant to turn over all of his electronics for inspection and audit to determine whether he had any

evidence which he failed earlier to disclose, Appellees were never subjected to any such order, even though there is plain evidence that they withheld pivotal documents. The claim that this was not intentional defies common sense. The conclusion that this pattern of misrepresentation did not influence the court is belied by the orders entered below, which counterpose Appellees' purported goody two shoes compliance with Appellant's alleged lawlessness.

The decision below should be reversed, the voluntary dismissal vacated, and the matter remanded for further proceedings to ascertain the extent of the misconduct in which Appellees and their counsel engaged.

Dated:     Goshen, New York
         July 19, 2024            Respectfully submitted,

                                  SUSSMAN & GOLDMAN
                                  *Attorneys for Plaintiff-Appellant*

                                By:   */s/ Michael H. Sussman*
                                  Michael H. Sussman, Esq.
                                  1 Railroad Avenue, Ste. 3
                                  P.O. Box 1005
                                  Goshen, New York 10924
                                  (845) 294-3991 [Tel.]
                                  (845) 294-1623 [Fax]
                                  sussman1@sussman.law

**CERTIFICATION OF COMPLIANCE WITH TYPE-VOLUME
LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE
REQUIREMENTS**

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 5,830 words, excluding those parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

I hereby certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word in Time New Roman 14-point type for text and footnotes.

# SPECIAL APPENDIX

**SPECIAL APPENDIX**
**TABLE OF CONTENTS**

District Court Opinion & Order, entered March 20, 2024 ................................. SA-1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DAN GIURCA,

                    Plaintiff,

        – against –

MONTEFIORE HEALTH SYSTEM,
INC., M.D. JEFFREY WEISS, M.D.
CLAUS VON SCHORN, *and* M.D. GARY
ISHKANIAN.,

                    Defendants.

---

**OPINION & ORDER**

18-cv-11505 (ER) (BCM)

Ramos, D.J.:

        Dan Giurca brought this case against Montefiore Health System, Inc.

("Montefiore"), Jeffrey Weiss, Claus Von Schorn, and Gary Ishkanian (collectively,

"Defendants"), asserting claims under the federal False Claims Act ("FCA") and related

state law claims, including a claim for defamation.  The case has been closed since

August 25, 2020, when the parties filed a stipulation of dismissal with prejudice pursuant

to Federal Rule of Civil Procedure 41(a)(1)(A)(ii).  Since then, Giurca has thrice

attempted to vacate that voluntary dismissal and reopen the case pursuant to Rule 60.

        Before the Court is Magistrate Judge Barbara C. Moses' December 21, 2023

Report and Recommendation ("R&R") on the third of those attempts, in which Judge

Moses recommended denying the motion to reopen.  Doc. 139.  For the reasons set forth

below, the Court adopts the R&R.  Giurca's motion to reopen is DENIED.

I.    BACKGROUND

        The Court assumes the parties' familiarity with the facts, particularly as Judge

Moses thoroughly recounted them in her R&R.  The Court summarizes Giurca's

allegations only to the extent relevant to the instant motion.

        Giurca, a psychiatrist, filed this suit on December 10, 2018 against his former

employer, Montefiore, and three senior Montefiore physicians, alleging that he was

forced to resign from his position at Montefiore Mount Vernon Hospital and thereafter barred from all Montefiore facilities in retaliation for whistleblowing on alleged patient neglect, Medicaid and Medicare fraud, and malpractice at the hospital. Doc. 139 at 1–2. He further alleges Montefiore then cost him his subsequent job at Orange Regional Medical Center ("ORMC"), which is part of a different hospital network, by creating a "security alert" with his photo, which it posted on the wall of the security office at a Montefiore facility in Wakefield. *Id.* at 2, 4. ORMC's chief of psychiatry saw the photo at the Wakefield facility, which Giurca alleged damaged his reputation at ORMC and ultimately led to his dismissal from that hospital as well. *Id.* at 4.

Following several discovery disputes in which both sides accused the other of significant discovery misconduct and intentionally withholding relevant discovery, the Court imposed sanctions against Giurca for his discovery misconduct. *Id.* at 4–6. At a conference held on August 12, 2020 to determine the sanctions to impose against Giurca for manipulation and intentional withholding of evidence, the parties made the following representations to Judge Moses regarding the state of discovery:

> THE COURT: With the possible exception of discreet issues which come up at one or more of these depositions, is all document discovery now complete as far as you are concerned, Mr. Sadowski [then counsel for Giurca]?
>
> MR. SADOWSKI: I think there are, as defendants alluded to in a footnote to the correspondence to the Court, there are I believe two documents that defendants have yet to produce that they categorize as elusive.
>
> THE COURT: These are billing sheets, right?
>
> MR. SADOWSKI: Yes, Your Honor.
>
> THE COURT: All right, and those are the only missing documents that you're aware of?
>
> MR. SADOWSKI: Yes, Your Honor.
>
> THE COURT: All right, Ms. Gambardella [Defendants' counsel]?
>
> MS. GAMBARDELLA: Yes.

> THE COURT: Do you concur with that status report regarding discovery?
>
> MS. GAMBARDELLA: I do, with one additional remark, Your Honor, and the reason we categorize them as elusive, is they are aged, they are, we just can't find them, we're going back through servers and possible third party providers to see if we can find them. So there's been no lack of diligence in that regard, but otherwise I concur.

Doc. 96 at 5:12–6:11.  Shortly thereafter, on August 25, 2020, the parties filed a stipulation of dismissal with prejudice.  Doc. 139 at 7.

On March 5, 2021, six and a half months after the dismissal, Giurca moved to vacate his voluntary dismissal pursuant to Rule 60(b)(3), which permits the Court to relieve a party from a final judgment for "fraud," "misrepresentation," or "misconduct by an opposing party."  *Id.* at 9.  Repeating allegations of discovery misconduct already made, Giurca alleged that Defendants withheld evidence and perjured themselves at their depositions.  *Id.* at 9–10.  Defendants served a motion for Rule 11 sanctions on Giurca pursuant to Rule 11(c)(2)'s safe harbor provision.  *Id.* at 10.  Giurca withdrew the Rule 60 motion three days prior to the expiration of the safe harbor period.  *Id.*

But, two weeks later, on June 28, 2021, Giurca again sought leave to file a vacatur motion, this time pursuant to Rule 60(b)(2), which permits the Court to relieve a party from a final judgment based on "newly discovered evidence."  *Id.* at 10.  In support of his motion, Giurca submitted emails produced in his parallel litigation against ORMC but which Montefiore never produced in the instant litigation, alleging the emails demonstrated that several witnesses had perjured themselves at their depositions.  *Id.* at 10–12.  Judge Moses denied the motion on July 1, 2021 on the basis that Giurca failed to meet his heavy burden under Rule 60(b)(2) because a diligent plaintiff would have taken steps to obtain emails from ORMC before voluntarily dismissing the case.  *Id.* at 12.  She also noted that the emails would not have changed the outcome of the case in any event, given that he had ample other evidence of Montefiore's alleged retaliation, and he chose

the outcome for himself through the voluntary dismissal.  *Id*. at 12–13.  Giurca did not file any objections to Judge Moses' decision, nor seek reconsideration.  *Id*. at 13.

But on June 21, 2023, nearly two years later, Giurca again moved to vacate his voluntary dismissal, again arguing that newly discovered evidence showed that deponents committed perjury, and Montefiore deliberately concealed that evidence.  *Id*. at 13.  Giurca largely attached the same evidence submitted with his second motion, but his arguments in this instance were pursuant to Rule 60(d)(3), rather than 60(b)(2) or (b)(3), which permits the Court to set aside a judgment for "fraud on the court."  *Id*. at 13–15.

Parsing Giurca's voluminous submissions, Judge Moses found that Montefiore had no access to, let alone responsibility to produce, most of the evidence Giurca alleges Montefiore intentionally withheld.  *Id*. at 22–23.  But there was a single email that should have been produced in discovery but was not ("the Email").  *Id*. at 22.  Judge Moses stated that she "does not condone" Montefiore's failure to produce the Email, but "Rule 60(d)(3) 'cannot be read to embrace any conduct of any adverse party of which the court disapproves.'"  *Id.* at 23–24 (quoting *Kupferman v. Consol. Research & Mfg. Corp.*, 459 F.2d 1072, 1078 (2d Cir. 1972)).  She noted that the Second Circuit has held that allegations of nondisclosure of discovery evidence or perjury are not bases for vacatur under Rule 60(d)(3) because they are, "at worst, 'a fraud upon a single litigant' rather than 'a fraud upon the Court.'"  *Id.* at 24 (collecting cases).  Judge Moses further observed that any alleged discovery misconduct "could not have interfered with the [c]ourt's ability to perform its impartial task of adjudging cases because the [c]ourt was never asked to perform that task":

> Giurca did not lose this case at trial, or on a motion for summary judgment, or as a result of any other merits adjudication.  Nor was he ever sanctioned under Rule 11.  Instead, faced with garden-variety discovery sanctions, he executed a stipulation of dismissal pursuant to Rule 41(a)(1)(A)(ii), which required no judicial decision-making.  Unsurprisingly, therefore, [Giurca] does not explain how

> [D]efendants' alleged misconduct affected the [c]ourt's adjudication
> of this case, as opposed to his own litigation decision-making.

*Id.* at 24 (internal citations and quotation marks omitted).  Accordingly, as "[t]here must

be an end to litigation someday," and Giurca made a "free, calculated, [and] deliberate"

choice to dismiss his case, Judge Moses denied his motion on December 21, 2023.  *Id.* at

25 (citation omitted).

Gircua submitted an objection to Judge Moses' R&R on January 4, 2024 (Doc.

140), to which Defendants filed an opposition on January 18, 2024 (Doc. 141).

## II.    LEGAL STANDARD

A district court reviewing a magistrate judge's R&R "may accept, reject, or

modify, in whole or in part, the findings or recommendations made by the magistrate

judge." 28 U.S.C. § 636(b)(1)(C).  Parties may raise "specific," "written" objections to

the report and recommendation "[w]ithin fourteen days after being served with a copy."

*Id.*; *see also* Fed. R. Civ. P. 72(b)(2).  A district court reviews *de novo* those portions of

the report and recommendation to which timely and specific objections are made.  28

U.S.C. § 636(b)(1)(C); *see also United States v. Male Juv.*, 121 F.3d 34, 38 (2d Cir.

1997).  The district court may adopt those parts of the report and recommendation to

which no party has timely objected, provided no clear error is apparent from the face of

the record.  *Lewis v. Zon*, 573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008).  The district court

will also review the R&R for clear error where a party's objections are "merely

perfunctory responses" argued in an attempt to "engage the district court in a rehashing of

the same arguments set forth in the original petition."  *Ortiz v. Barkley*, 558 F. Supp. 2d

444, 451 (S.D.N.Y. 2008) (citations and internal quotation marks omitted).

## III.   DISCUSSION

Giurca makes only one objection to the R&R:  that Judge Moses "trivialized the

significance" of the fact that Montefiore's counsel represented to Judge Moses at the

August 12, 2020 conference that Montefiore had produced all relevant documents, even

though the Email had not been produced.  Doc. 140 at 12.  Giurca argues that, if he had

the Email, he would have had evidence that the security alert was circulated outside Montefiore to support his claim for defamation. *Id.* at 12–13. By failing to produce the Email, claiming that his claims were baseless, and threatening to seek sanctions, Giurca alleges Montefiore committed "attorney-sanctioned conduct [that] may constitute fraud on the court." *Id.* at 13. In other words, Giurca argues that the added fact of Montefiore's counsel's involvement in the withholding of the Email transforms it into a fraud upon the court within the meaning of Rule 60(d)(3). *Id.* at 13–14.[1]

Fraud on the court is "fraud which seriously affects the integrity of the normal process of adjudication." *Gleason v. Jandrucko*, 860 F.2d 556, 559 (2d Cir. 1988). The movant bears the burden of proving fraud upon the court by clear and convincing evidence. *Duka v. Alliance Tri-State Constr., Inc.*, 20-cv- 6648 (ER), 2021 U.S. Dist. LEXIS 186975, at *10–11 (S.D.N.Y. Sep. 29, 2021). A party commits fraud on the court when it knowingly acts to "set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." *Id.* (quoting *McMunn v. Memorial Sloan-Kettering Cancer Ctr.*, 191 F. Supp. 2d 440, 445 (S.D.N.Y. 2002)). It requires more than just a single instance of perjury. *Id.* at *10. Rather, courts in this Circuit generally require a "prolonged and calculated" scheme, "repetitive campaigns," or other similarly lengthy pattern of misbehavior before finding fraud on the court. *Id.* at *12–13 (collecting cases); *see also LinkCo, Inc. v. Akikusa*, 615 F. Supp. 2d 130, 135 (S.D.N.Y. 2009) (noting that "bribing a judge, tampering with a jury, and hiring an attorney for the purpose of influencing a judge are examples of fraud upon the court," but neither "allegations of nondisclosure during pretrial discovery" nor "[a]fter-discovery evidence of alleged perjury by a witness [or other fabricated evidence] is" enough (alternations in original)),

---

[1] The remainder of Giurca's brief rehashes the arguments in his original motion and is therefore reviewable for only clear error, which the Court does not find here. *See Ortiz*, 558 F. Supp. 2d at 451.

*aff'd* 367 F. App'x 180 (2d Cir. 2010); *Azkour v. Little Rest Twelve,* No. 10-cv-4132 (RJS), 2017 WL 1609125, at *8 (S.D.N.Y. Apr. 28, 2017) (noting that fraud on the court is distinct from fraud on an adverse party).

Giurca's objection to the R&R fails for several reasons. First, fraud upon the court requires intentionality. *See Duka*, 2021 U.S. Dist. LEXIS 186975, at *10–11 (describing fraud upon the court as requiring a party to "act[] knowingly," to "sentiently set in motion some unconscionable scheme," or otherwise "deliberately," "intentionally[,] and repeatedly" act). Giurca has not demonstrated that the failure to produce the Email was intentional rather than inadvertent. At the August 12, 2020 conference—which was held primarily to adjudicate *Giurca's* extensive and intentional discovery misconduct— the Court first asked Giurca's counsel whether document discovery was complete. Doc. 96 at 5:12–6:11. After he indicated that only two documents were outstanding, Defendants' counsel concurred with Giurca's counsel and noted that the outstanding documents were difficult to find despite extensive searches. *Id.* Neither party discussed the production of emails. There is nothing in the record before the Court to suggest that the failure to produce the Email was intentional, as opposed to inadvertent, particularly given the innumerous discovery issues in the case, or that Defendants' counsel had awareness of the Email. That is far from the clear and convincing evidence necessary to show fraud on the court. *See Duka*, 2021 U.S. Dist. LEXIS 186975, at *10–11.

Second, *even if* Defendants' counsel's inaccuracy as to the completion of discovery was intentional, that is still not the "prolonged and calculated" scheme, "repetitive campaigns," or other similarly lengthy pattern of misbehavior necessary for a finding of fraud on the court. *Id.* at *12–13. And Giurca has provided no authority that a single misrepresentation—even if by counsel, rather than by a litigant—is enough for fraud upon the court. A single instance of perjury is not fraud upon the court, *see id.* at *10, nor is pretrial discovery nondisclosure during pretrial or fabricated evidence, *LinkCo*, 615 F. Supp. 2d at 135. And the alleged intentional withholding of the Email

does not rise to a level like that of "bribing a judge, tampering with a jury, [or] hiring an attorney for the purpose of influencing a judge." *See id.* Accordingly, Giurca has simply failed to show fraud upon the court.

Finally, *even if* the misrepresentation was intentional *and* a single misrepresentation could constitute fraud upon the court, it is nonetheless fatal to Giurca's argument that the case was disposed of based on *his* voluntary dismissal. As Judge Moses noted, any alleged discovery misconduct "could not have interfered with the [c]ourt's ability to perform its impartial task of adjudging cases because the [c]ourt was never asked to perform that task." Doc. 139 at 24. No judicial decision-making was required because Giurca voluntarily dismissed the case. *Id.* at 24–25. At most, the misconduct affected Giurca's litigation decision-making, rather than any court action. *Id.* at 24. But fraud on an adverse party fraud is not the same as fraud upon the court. *Azkour,* 2017 WL 1609125, at *8.

Accordingly, the Court agrees with Judge Moses that Giurca has failed to satisfy his heavy burden to show fraud upon the court and properly denied his motion to reopen.[2]

## IV.    CONCLUSION

For the foregoing reasons, Giurca's motion to reopen is DENIED. The Clerk of Court is respectfully directed to terminate the motion (Docs. 135, 140).

It is SO ORDERED.

Dated:    March 20, 2024
          New York, New York

_____
          EDGARDO RAMOS, U.S.D.J.

---

[2] In the conclusion of Defendants' response in opposition to Giurca's objections, they ask that the Court, in addition to adopting the R&R in full, also "enter an Order prohibiting [Giurca] from initiating any attempts to reopen this case without first seeking Court approval [and] award Defendants their costs and disbursements incurred in opposing [Giurca's] baseless motion." Doc. 141 at 23. Those issues were not raised before Judge Moses nor mentioned anywhere in the R&R—which also means Giurca never had an opportunity to respond to the requests. Accordingly, the Court will not decide the requests here.