# 24-858

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

---

DR. DAN GIURCA,
*Plaintiff–Appellant,*

v.

MONTEFIORE HEALTH SYSTEM, INC., M.D. JEFFREY WEISS,
M.D. CLAUS VON SCHORN, M.D. GARY ISHKANIAN,
*Defendants–Appellees.*

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

**BRIEF OF DEFENDANTS–APPELLEES
MONTEFIORE HEALTH SYSTEM, INC., M.D. JEFFREY WEISS,
M.D. CLAUS VON SCHORN, M.D. GARY ISHKANIAN**

---

Jeffrey R. Babbin
Mary A. Gambardella
Lawrence Peikes
WIGGIN AND DANA LLP
265 Church Street
P.O. Box 1832
New Haven, CT 06508-1832
(203) 498-4400
jbabbin@wiggin.com
mgambardella@wiggin.com
lpeikes@wiggin.com

*Attorneys for Defendants–Appellees*

## CORPORATE DISCLOSURE STATEMENT

Montefiore Health System, Inc. states that its parent corporation and any publicly held corporation that owns 10% or more of its stock is Montefiore Einstein, Inc.

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ............................................. i

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION .............................................................................. 1

STATEMENT OF THE CASE .............................................................. 5

  A. Dr. Giurca's discovery misconduct and voluntary dismissal ........... 6

  B. Dr. Giurca's initial efforts to vacate his voluntary dismissal .......... 9

  C. Dr. Giurca's renewed effort, within a year of the voluntary
     dismissal, to vacate it under Rule 60(b)(2) .................................... 12

  D. Dr. Giurca's newest effort, nearly three years after the voluntary
     dismissal, for vacatur due to supposed "fraud on the court" ......... 15

SUMMARY OF ARGUMENT .................................................................. 22

ARGUMENT ....................................................................................... 24

The District Court Did Not Abuse Its Discretion by Denying
Plaintiff's Motion to Vacate the Parties' Joint Stipulation for
Voluntary Dismissal. ......................................................................... 26

  A. There was no fraud on the court ..................................................... 26

  B. There was no fraudulent scheme perpetrated by counsel. ............ 31

  C. There was no court-issued judgment to be vacated. ..................... 33

CONCLUSION ..................................................................................... 35

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Gleason v. Jandrucko,*
 860 F.2d 556 (2d Cir.1988) ........................................ 27, 28, 29, 30, 33

*King v. First Am. Investigations, Inc.,*
 287 F.3d 91 (2d Cir. 2002) ...................................................... 26, 27

*Kupferman v. Consol. Rsch. & Mfg. Corp.,*
 459 F.2d 1072 (2d Cir. 1972) ...................................... 27, 28, 29, 31, 33

*LinkCo, Inc. v. Naoyuki Akikusa,*
 367 F. App'x 180 (2d Cir. 2010) ........................................................ 34

*Marco Destin, Inc. v. Levy,*
 111 F.4th 214 (2d Cir. 2024) ...................................................... 26, 34

*RJE Corp. v. Northville Indus. Corp.,*
 329 F.3d 310 (2d Cir. 2003) ........................................................ 26, 32

*In re Sims,*
 534 F.3d 117 (2d Cir.2008) ................................................................ 34

*Transaero, Inc. v. La Fuerza Area Boliviana,*
 24 F.3d 457 (2d Cir.), *on reh'g in part,* 38 F.3d 648 (2d Cir. 1994) ................................................................................................ 32

*United States v. Beggerly,*
 524 U.S. 38 (1998) .......................................................... 28, 29, 32, 33

## Rules

Fed. R. Civ. P. 11 .......................................................................... 2, 12, 15

Fed. R. Civ. P. 41(a)(1)(A)(ii) ...................................................... 1, 8, 9, 33

Fed. R. Civ. P. 60 ..................................... 2, 3, 4, 15, 22, 25, 30, 34, 35

iii

Fed. R. Civ. P. 60(b)................................................................ 28, 29, 30, 34

Fed. R. Civ. P. 60(b)(2) ................. 2, 3, 4, 12, 14, 15, 16, 17, 18, 23, 25, 27

Fed. R. Civ. P. 60(b)(3) ... 2, 4, 10, 11, 12, 13, 15, 16, 18, 23, 25, 27, 28, 32

Fed. R. Civ. P. 60(b)(6) ................................................................ 3, 15, 18

Fed. R. Civ. P. 60(d)................................................................ 29, 30, 34

Fed. R. Civ. P. 60(d)(1) ................................................................ 34

Fed. R. Civ. P. 60(d)(3) .............. 3, 5, 15, 18, 20, 21, 22, 23, 26, 33, 34, 35

# INTRODUCTION

This case concluded on August 25, 2020, when the parties jointly filed a stipulation of voluntary dismissal, with prejudice and without costs, pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure. Under that rule, a plaintiff like appellant Dan Giurca, M.D., can dismiss an action in this manner "without a court order." Along with his counsel, Dr. Giurca personally signed the stipulation of dismissal after he was faced with a court order sanctioning him for his egregious discovery violations, which (absent that stipulation) would have required him to personally pay Defendants' legal fees and expenses and to hand over his personal electronic devices for a forensic examination.

Ever since that dismissal, Dr. Giurca has on numerous occasions sought to undo his voluntary abandonment of his complaint. First, in September 2020, he wrote a letter to the trial court accusing his own counsel (who still had an appearance) of negligence and unethical conduct in connection with the discovery proceedings prior to the voluntary dismissal. The court returned the improper letter, which was not submitted through counsel, and took no action.

1

Second, in May 2021, Dr. Giurca retained new counsel, who moved to vacate the stipulation of voluntary dismissal under Rule 60(b)(3) of the Federal Rules of Civil Procedure on the ground that the stipulation was the result of the original counsel's incompetence, but also had allegedly been procured by the fraud or misconduct of Defendants and their counsel. Although he purported to support the motion with a memorandum of law, affidavit, and 72 exhibits, Dr. Giurca withdrew the Rule 60 motion soon after receiving a proposed Rule 11 motion from Defendants' counsel.

Third, and within days of withdrawing the previous motion, Dr. Giurca submitted a letter to the court in June 2021, with several attached exhibits, seeking leave to pursue a new motion under Rule 60(b)(2) of the Federal Rules of Civil Procedure. This time, the claimed ground to vacate the voluntary dismissal was newly discovered evidence of perjury and failure to produce documents in discovery (although those subjects were also included within the earlier withdrawn Rule 60(b)(3) motion). The trial court promptly denied that request as lacking any merit. Dr. Giurca did not appeal.

Finally, after two more years had passed, Dr. Giurca again retained new counsel in June 2023 and, shortly thereafter, filed yet another motion to vacate the voluntary dismissal. That motion is the subject of this appeal. In an apparent effort to exhaust all possible grounds for a Rule 60 motion, this time Dr. Giurca relied on Rules 60(b)(6) and 60(d)(3) of the Federal Rules of Civil Procedure. Like his unsuccessful effort under Rule 60(b)(2), Dr. Giurca recited a purported litany of accusations of witness perjury and failure to disclose evidence in discovery. The Magistrate Judge recommended that the motion be denied, Dr. Giurca objected to the recommended ruling (although he dropped all references to Rule 60(b)(6)), but the District Court was not persuaded by the objection and adopted the Magistrate Judge's recommended ruling, finding that Dr. Giurca failed to satisfy the exacting standards for demonstrating "fraud on the court" for purposes of Rule 60(d)(3).

The District Court was correct. Stripped of its rhetoric, Dr. Giurca's opening brief does not come to terms with the applicable legal principles, which plainly (as the court below held) bar his fourth effort to impugn his own decision to avoid sanctions by agreeing to dismiss his

3

lawsuit. Faced with the one-year time limit for renewing his earlier efforts under Rules 60(b)(2) and (3), Dr. Giurca sought to contort his well-worn complaints about Defendants by labeling them "fraud on the court," for which there is no strict time limit. But it is precisely to avoid that sort of gamesmanship why this Circuit has made it exceedingly difficult to reopen a case with that incendiary accusation. The conduct Dr. Giurca complains about—discovery issues and alleged perjury by non-party witnesses (and not by Defendants' own witnesses)—is akin to his earlier unsuccessful Rule 60 motions and do not as a matter of law constitute fraud on the court. That is especially true here where the District Court found no fraudulent scheme by Defendants or their counsel and where any alleged conduct could not have affected the court's decision-making process because Dr. Giurca had voluntarily stipulated to a dismissal, which required no action by the court.

The District Court's order is reviewed for abuse of discretion, and on this record it is not a close call: the court's denial of the motion fell well within its discretion. This Court should therefore affirm.

4

## STATEMENT OF THE CASE

Dr. Giurca's Statement of the Case in his opening brief recites various allegations in his complaint and his version of how the litigation, including discovery, proceeded before he withdrew his lawsuit against Montefiore Health System, Inc. ("Montefiore") and three Montefiore physicians. But very little of that background discussion is relevant to the only issue on appeal, whether there was a "judgment" that should be set aside due to "fraud on the court" pursuant to Rule 60(d)(3). Montefiore made a record below by refuting the various accusations tossed around by Dr. Giurca,[1] but his misstatements and mischaracterizations do not in any event control whether the court acted within its ample discretion to deny his fourth effort to vacate the stipulation of voluntary dismissal.[2]

---

[1] *See* Joint Appendix ("JA"), JA1703-55 (Montefiore's memorandum of law [141] and supporting affidavits [142] & [143] in opposition to Plaintiff's objections to the Magistrate Judge's recommended ruling).

[2] One omission from Dr. Giurca's Statement of the Case is notable, namely that the New York State Department of Health ("DOH"), after an inspection, found "[n]o regulatory deficiencies" regarding "the issues raised in [Dr. Giurca's] individual complaint" (although unrelated issues were identified for Montefiore to correct). JA192 (DOH letter to Dr. Giurca [82-2]); JA1664 at fn.3 (Magistrate Judge's ruling [139]).

What *is* relevant are the events that undeniably led Dr. Giurca to abandon his complaint and the District Court's findings that the events now raised by Dr. Giurca do not even come close to constituting fraud on the court.

## A. Dr. Giurca's discovery misconduct and voluntary dismissal

In July 2020, before the lawsuit was withdrawn, Defendants brought to the court's attention that Dr. Giurca had, about a year late, suddenly turned over as a "supplemental" production about 83 audio recordings (including surreptitious recordings he had made of conversations with colleagues and supervisors at Montefiore) and numerous other documents he had long possessed, including those relating to the DOH inquiry and the termination of his employment by a subsequent employer. Dr. Giurca had delayed production until *after* he was deposed, *after* decisions were made by defense counsel about who else to depose (including individuals associated with his subsequent employer who had terminated his employment), and close to the cutoff for fact discovery. Defendants therefore requested that the court allow a forensic examination of Dr. Giurca's electronic devices and require him to reimburse Defendants for their related attorneys' fees

and expenses. JA213-23 [86]; Appellees' Supplemental Appendix

("Supp. A"), Supp. A1-5 [90].[3]

The court viewed Defendants' concerns as potentially quite serious

and scheduled a conference to further consider Defendants' request,

simultaneously ordering Plaintiff to respond to the request and for his

counsel to supply a sworn declaration with more details about the

causes of the delayed production and any excuses for it. Supp. A3-4 [90].

Following the conference and based on the declaration of Dr. Giurca's

own counsel,[4] the court granted in large part the request for discovery

sanctions. This was based on findings that Dr. Giurca had failed to

timely produce an abundance of audio recordings and documents stored

on several electronic devices. The court ordered a forensic examination

---

[3] Docket entry 90 is a court order in the Joint Appendix at JA227-31;
however, the copy that Appellant included in the appendix is corrupted
and illegible, so another copy is included in Appellees' Supplemental
Appendix.

[4] As the Magistrate Judge more recently recounted, when
recommending denial of the motion at issue in this appeal, the evidence
showed that Dr. Giurca deliberately failed to produce recordings and
documents—and he even redacted portions of one produced recording—
because he unilaterally (without consulting his counsel) deemed them
not "vital" or "relevant" to the lawsuit. JA1666-67 ([139] at 5-6 & n.8);
*see also* JA273-75 [94] (defense counsel's recitation of Dr. Giurca's
discovery misconduct, including altering audio recordings).

of Dr. Giurca's devices (to be arranged by his counsel) and awarded Defendants their attorneys' fees and expenses in pressing for sanctions and conducting a renewed deposition. JA276-78 [95]. The fees and expenses were "assessed jointly and severally against plaintiff and his counsel." JA277 ([95] at 2).

Defendants did not file a fee application because, on August 25, 2020 (the day after the fee submission was due), the parties filed a joint Stipulation of Dismissal with Prejudice pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure, without costs or fees to any party and with the parties waiving all rights of appeal. JA279-85 [100]. As the Magistrate Judge later noted: "The stipulation was signed by plaintiff personally (as well as by [his attorney]), and it dismissed 'all claims or causes of action that were or could have been asserted [in this action] by either party.'" JA1668 ([139] at 7) (quoting Stipulation).

As Dr. Giurca's own brief in this appeal asserts, he dropped his case on advice of his counsel, who purportedly stated he would withdraw from the representation. Appellant's Br. at 6. In other words, the dismissal of the case was due to pressure brought to bear on Dr. Giurca by his attorney. The dismissal was not an action taken by the

court, and the court did not even so-order the stipulation, which was self-executing. *See* Fed. R. Civ. P. Rule 41(a)(1)(A)(ii) ("[T]he plaintiff may dismiss an action without a court order by filing . . . a stipulation of dismissal by all parties who have appeared.")[5]

### B. Dr. Giurca's initial efforts to vacate his voluntary dismissal

Dr. Giurca, within a couple of weeks of withdrawing his complaint, twice wrote directly to the court (bypassing his counsel of record) to accuse his own counsel of "highly unethical conduct." Appellant's Br. at 6-7. The court noted on the docket sheet the receipt of these two letters in September 2020, in which Dr. Giurca also claimed negligence by his lawyer and misconduct by defense counsel—but the court, citing a lack of jurisdiction and the bypassing of counsel, did not

---

[5] The filed Stipulation had a blank page for the court to sign, but the court did not sign it. *See* Supp. A13 ([100] at 8). (In the Joint Appendix compiled by Appellant, the Stipulation at JA279-85 is missing that page with the blank court signature line, which should have been JA286—so the full stipulation is reproduced in Appellees' Supplemental Appendix at Supp. A6-13.) Also, the docket sheet at Entry No. 100 ("Stipulation of Voluntary Dismissal") shows no action by the court and, instead, has a clerical entry following a review by "Clerk's Office staff": "(No action required by chambers)." (Appellant omitted the docket sheet from the Joint Appendix, despite referencing it in the appendix's table of contents, so the docket entry is included in Appellees' Supplemental Appendix at Supp. A14.)

docket the letters, noting instead that they would be forwarded to counsel. JA287 [101]; JA288 [102].

The docket in the closed case was quiet until March 2021 when new counsel for Dr. Giurca wrote the court seeking permission to file a motion to vacate the stipulation of voluntary dismissal pursuant to Rule 60(b)(3) of the Federal Rules of Civil Procedure, which allows a court to vacate a judgment or order due to fraud, misrepresentation, or misconduct by an opposing party. JA289-91 [103]. The letter noted that the relief sought was in furtherance of the earlier rejected letters from Dr. Giurca in September 2020. New counsel asserted that Dr. Giurca had been pressured into signing the stipulation because former counsel "told him that if he didn't sign it, [former counsel] was going to make a motion to be relieved, and that Plaintiff was going to be responsible for all of the sanctioned attorney's fees in an amount believed to be over $46,000.00. Plaintiff was told that if he signed the stipulation of voluntary dismissal, opposing counsel would forgo her sanction request." JA289. Once again, on behalf of Dr. Giurca, this letter from new counsel related how Dr. Giurca blamed his former counsel for not adequately addressing the court's inquiries at the time the court was

exploring Defendants' complaints about Dr. Giurca's discovery violations. JA289-90. The letter also referred to Defendants' purported failures to comply with discovery orders, which (according to the letter) supported a request for relief under Rule 60(b)(3). JA291.

After Defendants submitted a response outlining the flaws in Dr. Giurca's request for leave, JA292-95 [105], the court held a chambers conference to discuss that request. In the conference, Dr. Giurca's new counsel argued that alleged "discovery misconduct" by Defendants, including supposed failures to produce documents (for which new counsel blamed his predecessor counsel for not seeking to compel production) was a ground for Rule 60(b)(3) vacatur of the voluntary dismissal due to fraud or misconduct by an opposing party. Supp. A26-39 ([110] at 11-24]) (transcript). In order to provide a full airing of the issues, the court allowed Dr. Giurca to submit his Rule 60(b)(3) motion. Supp. A53-55 ([110] at 38-40); Supp. A15 [108].

New counsel then formally filed his appearance in place of original counsel and, on May 4, 2021 (within one year of the August 25, 2020 voluntary dismissal), filed the Rule 60(b)(3) motion with a supporting affidavit, memorandum of law, and 72 exhibits. JA329-1399 [119]. The

motion discussed supposed discovery misconduct by Defendants, "lies" by defense counsel to the court (which were really disagreements with defense counsel's positions on various matters), "perjury" by defense party witnesses at depositions (which were again merely a different, distorted view of events), and other actions Dr. Giurca thought somehow unfairly led the court to issue its sanctions order against him prior to the voluntary dismissal.

Defendants promptly served a proposed Rule 11 motion on Dr. Giurca and notified the court (without attaching the motion). JA1400 [121]. In accordance with Rule 11, Dr. Giurca chose to avail himself of Rule 11's safe harbor and formally withdrew his Rule 60(b)(3) motion rather than, once again, face the prospect of monetary sanctions. JA1401 [123].

### C. Dr. Giurca's renewed effort, within a year of the voluntary dismissal, to vacate it under Rule 60(b)(2)

Just two weeks later, on June 28, 2021 (still within one year of the voluntary dismissal), Dr. Giurca took a different approach. This time (with the same counsel who filed the abandoned Rule 60(b)(3) motion), he sought leave of court to move to vacate the stipulation of voluntary dismissal under Rule 60(b)(2) of the Federal Rules of Civil Procedure,

which governs the vacating of judgments due to newly discovered evidence that not could not reasonably have been discovered in a timely fashion. Supp. A61-79 [125].[6] Dr. Giurca, through his counsel's letter request, referred to a different lawsuit he had brought against his subsequent employer, Orange Regional Medical Center ("ORMC"), in which he obtained documents in discovery.[7] In his view, those documents showed that, in the present case, Defendants had "lied" to the court and committed "perjury" in their representations to his previous counsel and the court about the completeness of Defendants' document production and the factual positions they had taken in the case before the voluntary dismissal. Dr. Giurca also contended that the documents—which he claims Defendants had not been produced in this

---

[6] That letter request [125], and the Magistrate Judge's ruling [126], were omitted by Appellant in the Joint Appendix and so are supplied in the accompanying Appellees' Supplemental Appendix. The letter and ruling also addressed an unrelated request by Defendants to seal the earlier, withdrawn Rule 60(b)(3) motion.

[7] As the Magistrate Judge in this case later recounted, Dr. Giurca filed the separate lawsuit against ORMC after ORMC terminated his employment. In that lawsuit, Dr. Giurca alleged that ORMC unlawfully fired him for his "bringing to light and attempting to correct various instances of patient harm and abuse, defrauding Medicaid and other government-funded programs, and malpractice at ORMC." Supp. A82 ([126] at 3 n.1) (internal quotation marks omitted).

case but should have—show that Montefiore had communicated with ORMC about Montefiore treating him as a security threat. Supp. A61-62 ([125] at 1-2); *see also* Supp. A82-83 ([126] at 3-4) (Magistrate Judge's description of the Rule 60(b)(2) request).

The court promptly denied the request to seek relief under Rule 60(b)(2) on July 1, 2021, ruling that the supposed newly discovered evidence did not meet the demanding standards for relief—particularly where the case was voluntarily withdrawn. Supp. A80-88 [126]. The court ruled that, although Dr. Giurca had deposed non-party ORMC witnesses in this case (and now claims those witnesses perjured themselves), he had not done all he could to obtain documents from ORMC before he voluntarily dismissed this action. The court also ruled that Dr. Giurca could not meet the heavy burden to show the documents would have changed the outcome (i.e., the voluntary dismissal) because, at the time of dismissal, he already had what he believed to be evidence of Montefiore's alleged retaliation against him, yet he still chose to discontinue the case in the face of having to pay tens of thousands of dollars in sanctions. Supp. A85-88 ([126] at 6-9).

That order was issued by the Magistrate Judge. Dr. Giurca did not submit an objection to the District Court Judge and, therefore, did not appeal it to this Court.

### D. Dr. Giurca's newest effort, nearly three years after the voluntary dismissal, for vacatur due to supposed "fraud on the court"

It is remarkable that, in his appellate brief's Statement of the Case, Dr. Giurca's recitation of the procedural history makes no mention of his effort to vacate the stipulated dismissal under Rule 60(b)(2), which was based on accusations very similar to those in his later Rule 60(d)(3) motion that is the subject of this appeal—although at least the Rule 60(b)(2) effort complied with the one-year time limit. Instead, his Statement of the Case (and, similarly, the appendix he compiled) goes directly from the 2021 withdrawal of the Rule 60(b)(3) motion (due to the Rule 11 threat) to the 2023 motion that is now before this Court. *See* Appellant's Br. at 8.

After a two-year hiatus following the Rule 60(b)(2) effort, Dr. Giurca hired yet another new lawyer who, in June 2023, requested leave to file a motion to vacate the August 2020 stipulation of dismissal under different parts of Rule 60, namely Rules 60(b)(6) and 60(d)(3).

15

JA1402-18 [128]. Because the filing was defective, with pages out of order and other flaws, the court permitted the motion to be filed but in a more orderly manner—and directed Dr. Giurca to address the key issue whether the new motion was effectively no different than his earlier Rule 60(b)(3) and 60(b)(2) motions, which (unlike this new effort) were filed within those Rules' one-year time limit. JA1491-96 [133].

Dr. Giurca, through his newest lawyer, filed the motion on July 7, 2023. JA1497-1624 [135] (letter motion with 21 exhibits); *see* JA1633-35 [137] (supp. to motion). Defendants opposed the motion. JA1625-32 [136]; JA1636-61 [138] (supp. to opposition). Just as in his earlier, rejected Rule 60(b)(2) motion, Dr. Giurca relied on allegations that evidence obtained in his separate lawsuit against ORMC (his subsequent employer who terminated him) show that the ORMC physicians who had given non-party deposition testimony in this case (before the voluntary dismissal) had perjured themselves. JA1501-02 ([135] at 5-6). Dr. Giurca also relied on allegations that Defendants had improperly failed to produce documents in discovery that would have been helpful to Dr. Giurca's withdrawn claims, which might have caused him to reevaluate whether to voluntarily withdraw his

complaint even in the face of the discovery sanctions imposed on him. JA1502-05 ([135] at 6-9). Dr. Giurca further complained about a long delay in taking the deposition of a Montefiore employee in the separate lawsuit against ORMC after Montefiore had informed him the employee had been badly injured in an accident. JA1503 ([135] at 7).[8]

The court (in a recommended ruling by the Magistrate Judge) denied the new motion in a comprehensive memorandum. JA1662-87 [139]. After recounting the extensive procedural history, the court turned to the present motion. It noted the substantial overlap between this motion and the previous, denied Rule 60(b)(2) motion. Both motions relied on documents that pre-dated the voluntary dismissal in this case and were only later sought by Dr. Giurca and obtained from his subsequent employer, ORMC, in the separate litigation against that medical center, and which purported to show various contacts between Montefiore and ORMC. From these documents, Dr. Giurca contended that ORMC physicians had lied in their depositions as third-party

---

[8] The Montefiore employee was a non-party witness in that separate litigation between Dr. Giurca and his subsequent employer, ORMC. The delay in his deposition was the result of his "having fallen down a set of concrete stairs," which "required multiple surgeries and months of physical therapy." JA1626 ([136] at 2).

witnesses in this case and that Montefiore had concealed evidence that would have supported his claims in this case. JA1675-76 ([139] at 14-15). The court noted, however, that the rules Dr. Giurca previously relied on, Rules 60(b)(2) and 60(b)(3), were unavailable to him as more than one year had passed since the voluntary dismissal. Instead, Dr. Giurca relied on Rule 60(b)(6)—a catchall for "any other reason that justifies relief" from a judgment or order—and Rule 60(d)(3)'s provision for "set[ting] aside a judgment for fraud on the court." JA1676-77 ([139] at 15-16). The court further noted that, in a supplemental filing, Dr. Giurca abandoned reliance on Rule 60(b)(6). JA1677-78 ([139] at 16-17).

The court's ruling rejected relief for "fraud on the court" because Dr. Giurca had failed to prove by clear and convincing evidence that Defendants had interfered with the judicial system's ability to adjudicate matters fairly or that Dr. Giurca was unable with reasonable diligence to discover the documents he now relied on before he withdrew his complaint. JA1680-82 ([139] at 19-21). Moreover, the court found that, except for a single email from an ORMC employee to a Montefiore employee, all the documents relied on by Dr. Giurca in his motion were solely in the possession of a non-party, ORMC, and not Montefiore or

18

other defendants in this action (all Montefiore physicians)—and there was not a shred of evidence that Montefiore knew of those documents, possessed them, or had any responsibility to produce them. JA1683 ([139] at 22). The court also found that the so-called perjured deposition testimony in this case was proffered by third-party ORMC employees (and not by Defendants or any Montefiore employee). Although Dr. Giurca tried to stretch the bounds of agency law by calling one of the third-party witnesses an agent of Montefiore, the court found no evidence of an agency relationship. JA1684 ([139] at 23).[9] As for the one Montefiore employee where Dr. Giurca complained of a delay in obtaining his deposition testimony as a third party in the separate ORMC litigation, the court accepted that the employee had been out on medical leave for injuries (plus, the timing was such that his testimony, even if not delayed, would have been after it could have made any

---

[9] The third-party witness, Dr. Cesar Rojas, was ORMC's Chief of Psychiatry. JA1665 ([139] at 4). Once a month, on a per diem basis, Dr. Rojas also moonlighted at Montefiore. The court found on this record, including the fact that ORMC counsel represented Dr. Rojas at the deposition, that Montefiore was clearly not responsible for Dr. Rojas' deposition testimony as a third-party witness in this case. JA1676, 1684 ([139] at 15 n.14, 23).

difference to Dr. Giurca's course of action in this case). JA1684 ([139] at 23 & n.18).

As for the one lone email that the court found should have been produced by Defendants but had not been, the court held that a single instance of non-disclosure to an opposing party does not rise to the level of fraud on the court required for vacating the final disposition of the case, especially more than one year after that disposition. The court also correctly noted that nothing Defendants did affected *the court*, as the voluntary dismissal involved no judicial decision-making and required no action by the court. JA1684-85 ([139] at 23-24). The court concluded that Dr. Giurca "cannot expect the Court to relieve him of the consequences of his strategic decision [to voluntarily dismiss the case], three years later, on the grounds that defendants committed discovery misconduct and non-party witnesses lied at deposition." JA1685-86 ([139] at 24-25). Accordingly, in the Magistrate Judge's ruling, the court recommended that the motion be denied. JA1686 ([139] at 25).

Dr. Giurca timely objected to the Magistrate Judge's recommended ruling, relying solely on his claim of fraud on the court under Rule 60(d)(3). JA1688-1702 [140]. Defendants filed a

comprehensive, point-by-point refutation of every allegation made by
Dr. Giurca in his papers, showing that this Circuit's precedent for fraud
on the court foreclosed granting the relief sought, several years after
the case was voluntarily dismissed. *See* JA1703-55 (memorandum of
law [141]; declaration of one of Defendants' trial lawyers [142];
declaration of Montefiore's in-house counsel [143]). Defendants' outside
counsel confirmed he had never spoken to Dr. Rojas before deposing the
doctor as a third-party witness in this case. JA1726-27 ([142] at 1-2).
Montefiore's in-house lawyer explained that the one undisclosed email
referred to by the Magistrate Judge was not found when that email
account was electronically searched with search terms shared with Dr.
Giurca's counsel, so any non-disclosure was inadvertent. JA1754 ([143]
at 1).

Upon review of the papers and the record, the District Court (Hon.
Edgardo Ramos) adopted the Magistrate Judge's recommended ruling
and denied the Rule 60(d)(3) motion. Special Appendix at 1-8 [144].[10] In
addition to adopting that ruling, the court held that fraud on the court

---

[10] The District Court's Opinion & Order is found both in the Special
Appendix bound with Appellant's Brief *and* in the Joint Appendix,
JA1756-63.

requires intentionality, and Dr. Giurca failed to demonstrate by clear and convincing evidence (the relevant standard under Rule 60) that Defendant's failure to produce one email "was intentional rather than inadvertent." Special Appendix at 7 ([144] at 7). The court added that even if hypothetically any inadequacy in producing documents to the opposing party was intentional, that is not the sort of conduct that, more than a year from the disposition of the case, can allow the reopening of the case as it is not fraud on the court. Special Appendix at 7-8 ([144] at 7-8). Finally, the court noted that the discovery conduct had no effect on the court at all, as the case was disposed of through a voluntary dismissal. "At most, the [alleged] misconduct affected Giurca's litigation decision-making, rather than any court action. But fraud on an adverse party is not the same as fraud upon the court." Special Appendix at 8 ([144] at 8) (citation omitted). The court agreed with the Magistrate Judge and denied the motion. *Id.*

## SUMMARY OF ARGUMENT

Dr. Giurca voluntarily withdrew his lawsuit. Nearly three years later, he sought to vacate his stipulation for voluntary dismissal by claiming fraud on the court within the meaning of Rule 60(d)(3). The

22

District Court denied that motion. This Court should affirm because the lower court did not abuse its broad discretion when denying the motion.

First, the court applied the correct legal principles, which establish a narrow, stringent standard for fraud on the court to prevent a litigant from bypassing the strict one-year time limit for vacating a judgment under Rules 60(b)(2) and (b)(3) based on newly discovered evidence or the fraud, misrepresentation, or misconduct of an opposing party. The court correctly relied on precedent that allegations of discovery misconduct (either undisclosed documents or deposition witness perjury) affect only a single litigant and, even if they might be relevant to relief under Rule 60(b)(3), are not fraud on the court under Rule 60(d)(3).

Second, while a fraudulent course of conduct by a party's counsel can sometimes affect the machinery of the judicial system and be grounds for relief under Rule 60(d)(3), the District Court here correctly found no such conduct by Defendants' counsel.

Third, Rule 60(d)(3) only applies to vacating a judgment obtained through a fraud on the court. Here, the motion seeks to vacate a stipulation for voluntary dismissal, signed by all parties, and docketed

23

by the clerk without any action by the court. There is no judgment to be vacated.

The rulings below from the Magistrate Judge and District Court Judge, who were intimately familiar with the case and its procedural history, properly disposed of Dr. Giurca's fourth attempt to vacate his voluntary dismissal. The court's denial of the motion should be affirmed.

## ARGUMENT

Despite Dr. Giurca filing hundreds of pages, accompanied by his distortions of the record and personalized, baseless attacks on Montefiore and its counsel, the sole legal issue before this Court is straightforward and readily resolved. Dr. Giurca, faced with substantial monetary sanctions and an order to produce his electronic devices for forensic evaluation because of egregious discovery violations, followed his attorney's advice and voluntarily dismissed the case. Regret for that course of action was, in part, spawned by discovery Dr. Giurca obtained in a separate lawsuit, which he believes would have helped him pursue his claims in this case. He purports to believe he would have taken a different course of action in this case had he earlier known of that

evidence. Dr. Giurca has blamed his own original attorney for not being more aggressive in document discovery and for putting pressure on him to drop the case when he did.

Dr. Giurca proffered substantially those same allegations in his earlier Rule 60 motions, all filed within the one-year time limit for seeking to vacate the final disposition of a case with claims of misrepresentations of an opposing party or newly discovered evidence not obtainable earlier. Those efforts were either withdrawn (the Rule 60(b)(3) motion) or denied (the Rule 60(b)(2) motion). Then, nearly three years after this case was closed, he renewed the same types of complaints about Defendants' conduct, trying to fit within the rubric of "fraud on the court" to avoid the one-year time bar. The District Court, however, found there was no such fraud and exercised its discretion to deny the requested relief. That should finally bring this case to its second conclusion, well after it was first concluded with the stipulation of voluntary dismissal.

**The District Court Did Not Abuse Its Discretion by Denying Plaintiff's Motion to Vacate the Parties' Joint Stipulation for Voluntary Dismissal.**

The denial of a motion "asserting 'fraud on the court' under Rule 60(d)(3)" is reviewed on appeal "for abuse of discretion." *Marco Destin, Inc. v. Levy*, 111 F.4th 214, 216 (2d Cir. 2024); *see id.* at 219. "A court abuses its discretion when its decision rests on a legal error or a clearly erroneous factual finding, or when its decision does not fall within the range of permissible decisions." *RJE Corp. v. Northville Indus. Corp.*, 329 F.3d 310, 316 (2d Cir. 2003). Moreover, a party alleging fraud on the court must prove the claim "by clear and convincing evidence." *King v. First Am. Investigations, Inc.*, 287 F.3d 91, 95 (2d Cir. 2002). As explained below, Dr. Giurca did not make that showing. In the District Court's decision, which incorporated the Magistrate Judge's recommended ruling, there was no legal error; there were no erroneous factual findings, and nothing the court did fell outside the range of permissible decisions.

**A. There was no fraud on the court.**

Dr. Giurca has not shown how the District Court abused its discretion. The court applied well-established law governing the

stringent standard for finding fraud on the court, for a motion made beyond the one-year deadline applicable to a Rule 60(b)(2) or 60(b)(3) motion. This Court has made abundantly clear that "the type of fraud necessary to" attack a judgment for fraud on the court "is narrower in scope than that which is sufficient for relief by timely motion under Rule 60(b)(3) for fraud on an adverse party." *King*, 287 F.3d at 95 (internal quotation marks and brackets omitted). That is because " 'fraud upon the court' as distinguished from fraud on an adverse party is limited to fraud which seriously affects the integrity of the normal process of adjudication." *Gleason v. Jandrucko,* 860 F.2d 556, 559 (2d Cir.1988). Fraud on the court "should embrace only that species of fraud which does[,] or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Kupferman v. Consol. Rsch. & Mfg. Corp.*, 459 F.2d 1072, 1078 (2d Cir. 1972) (internal quotation marks omitted). Therefore, "fraud on the court involves far more than an injury to a single litigant because it threatens the very integrity of

the judiciary and the proper administration of justice." *Gleason*, 860
F.2d at 559 (internal quotation marks omitted).

There is good reason for imposing this stringent, narrow standard.
Otherwise, if fraud on the court could "embrace any conduct of an
adverse party of which the court disapproves," it "would render
meaningless the one-year limitation on motions [for fraud on an
opposing party] under F. R. Civ. P. 60(b)(3)." *Kupferman*, 459 F.2d
at 1078. The Supreme Court set the bar this high because, "[i]f relief
can be obtained" for supposed fraud on the court "where the most that
may be charged against [the opposing party] is a failure to furnish
relevant information that would at best form the basis for a Rule
60(b)(3) motion, the strict 1-year time limit on such motions would be
set at naught." *United States v. Beggerly*, 524 U.S. 38, 46 (1998). Thus,
"if Rule 60(b) is to be interpreted as a coherent whole," asserting fraud
on the court "must . . . be reserved for those cases of injustices which, in
certain circumstances, are deemed sufficiently gross to demand a

departure from rigid adherence" to finality of a judgment. *Id.* (internal quotation marks omitted).[11]

The District Court here abided by these very standards, where this Court's precedent applied those standards in similar circumstances. In *Gleason*, a plaintiff sought to vacate a prior judgment that "so ordered" a voluntary dismissal following the parties' settlement. 860 F.2d at 557. The stipulation dismissed the action with prejudice "in exchange for a waiver of any right defendants might have had to attorneys' fees, costs and sanctions." *Id.* at 558. Over two years later, the plaintiff sought to vacate that court-approved stipulation of dismissal by alleging that the defendants' employees "had perjured themselves at their depositions and intentionally had concealed relevant evidence, thereby inducing plaintiff to enter into the

---

[11] *Beggerly*, like some similar cases from this Circuit, arose in the context of an "independent action" (i.e., a separate lawsuit) filed to vacate the disposition of an earlier lawsuit, which Rule 60(d) permits. Thus, *Beggerly* spoke of departing from "res judicata" only for egregious fraud on the court—but nothing in *Beggerly* or any other case demands a departure from that rigid standard where the motion (like here) was made in the same case and not an independent action. *See id.* Indeed, *Kupferman* applied the stringent standard where the motion to vacate for supposed fraud on the court was made in the same case, to vacate a judgment rendered nine years earlier. *See* 459 F.2d at 1074, 1077-78.

stipulation." *Id.* at 557. Despite those allegations, this Court affirmed the district court's denial of relief, because "subsequently discovered evidence of perjury by a witness and nondisclosure does not support a finding of 'fraud upon the court' as required by" Rule 60 to set aside the earlier judgment. *Id.*; *see id.* at 559 ("After-discovered evidence of alleged perjury by a witness is simply not sufficient for a finding of 'fraud on the court' . . . [and] [s]imilarly [for] allegations of nondisclosure during pretrial discovery").[12]

This case is no different from *Gleason*, where the plaintiff could have (despite supposed perjury of witnesses) sought additional discovery from others; "[in]stead, however, [the plaintiff] voluntarily chose to settle the action." 860 F.2d at 559. Dr. Giurca similarly could have pursued third-party discovery from ORMC in this case and obtained the documents he ultimately did obtain, but instead he voluntary discontinued this case and only later obtained those

---

[12] *Gleason* referred to "fraud on the court" as part of the "saving clause" of Rule 60(b), *see id.* at 558-60, but that was because, at the time, the grounds for relief under what is now Rule 60(d) were set out within Rule 60(b) following the six enumerated grounds for relief in that subsection. In 2007, the saving clause of Rule 60(b) was moved to what is now Rule 60(d) without substantive change. *See* Fed. R. Civ. P. 60, 2007 advisory committee note.

documents in his separate lawsuit against ORMC. Supp. A85-88 ([126] at 6-9); *see* JA1683 ([139] at 22) (Magistrate Judge stating all but one document was solely in the custody or possession of a third party, ORMC). Moreover, Dr. Giurca does not dispute the basis for the District Court's sanctions order that led him to choose to discontinue his lawsuit, and he could not have ignored those impending sanctions even if he had additional documents that might have supported his case.

**B. There was no fraudulent scheme perpetrated by counsel.**

In his appellate brief, Dr. Giurca says this case is different from the precedent relied on by the District Court, because he argues that Defendants' own *counsel* participated in the fraud, perjury, and non-disclosures. Dr. Giurca strains to try and fit this situation within what this Court has referred to as "fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Kupferman*, 459 F.2d at 1078 (internal quotation marks omitted); *see id.* (fraud on court can arise when a party's "attorney was implicated in perpetrating the fraud").

31

This argument, however, ignores the District Court's findings that Defendants' counsel had no role in any supposed non-party witness perjury in pretrial depositions, had no role in any production of non-party ORMC's documents, and for the one email that should have been produced but was not, did not act intentionally but only inadvertently and innocently so there was no fraud perpetrated by officers of the court. There was plenty of evidence to support those findings. *See supra* at 18-22 (Statement of the Case). Therefore, the court did not abuse its discretion, because Dr. Giurca cannot show this was "a clearly erroneous factual finding." *RJE Corp.*, 329 F.3d at 316. *See Transaero, Inc. v. La Fuerza Area Boliviana*, 24 F.3d 457, 461 (2d Cir.) (noting that the plaintiff "has presented no evidence of bad faith or dishonesty by [opposing] counsel"), *on reh'g in part*, 38 F.3d 648 (2d Cir. 1994).

Given the lower court's factual findings, this case is no different than *Beggerly*, where the Supreme Court held that the allegation that the defendant "failed to 'thoroughly search its records and make full disclosure to the Court'" might be an argument available under Rule 60(b)(3) but presented no "grave miscarriage of justice" and "do[es] not

nearly approach this demanding standard" for establishing a fraud on the court. 524 U.S. at 47.

### C. There was no court-issued judgment to be vacated.

But even if defense counsel had acted with intention to hide evidence, any such hypothetical conduct would not have defiled the court or prevented the court from performing in the usual manner to impartially adjudicate cases (as required by *Kupferman*, 459 F.2d at 1078, to establish fraud on the court). That is because the court took no action at all. Dr. Giurca seeks to vacate his own signed, stipulation of voluntary dismissal. Unlike in *Gleason*, where a settlement resulted in a "so ordered" stipulation of dismissal, here there was no court action. The joint stipulation of all parties was self-executing under Rule 41(a)(1)(A)(ii), as reflected on the docket sheet, as the rule permits a plaintiff to "dismiss an action without a court order." *See supra* at 8-9 (Statement of the Case). The District Court here made that very point. *See* Special Appendix at 8 ([144] at 8). Rule 60(d)(3) applies only to vacating a "judgment," likely because that ground for relief, as

construed by the courts, only makes sense when there is a judgment finally disposing of the case.[13] There was no "judgment" in this case.

Given the record and the controlling law, this Court respectfully should affirm on the basis that "we cannot conclude that the district court's decision not to entertain [the plaintiff's] Rule 60(d) claim for fraud falls outside 'the range of permissible decisions.'" *LinkCo, Inc. v. Naoyuki Akikusa*, 367 F. App'x 180, 182-83 (2d Cir. 2010) (quoting *In re Sims,* 534 F.3d 117, 132 (2d Cir.2008)); *see Marco Destin, Inc.*, 111 F.4th at 216 ("the district court acted within its discretion when it declined to vacate the 2011 stipulated judgment based on its finding that [the plaintiff] should have uncovered the alleged fraud through the exercise of due diligence" before entering into the stipulation). Dr. Giurca did not present clear and convincing evidence of fraud on the court or how any such supposed fraud affected a non-existent court judgment. The District Court was correct to deny the motion.

---

[13] Other parts of Rule 60, including Rule 60(b) and Rule 60(d)(1), refer to a court relieving a party from a "judgment, order, or proceeding," but Rule 60(d)(3) applies only to a "judgment."

## CONCLUSION

Dr. Giurca's regret for voluntarily discontinuing his lawsuit when he faced the prospect of paying substantial sanctions and turning over his electronic devices for forensic examination does not provide grounds for reinstating his complaint. The rules are designed to ensure finality absent a compelling reason specifically recognized by Rule 60. Dr. Giurca's motion failed to comply with that rule.

For the foregoing reasons, the Court should affirm the order of the District Court denying Dr. Giurca's motion for relief from his stipulation of voluntary dismissal under Rule 60(d)(3).

Dated: October 18, 2024                    Respectfully submitted,

                                           */s/ Jeffrey R. Babbin*
                                           Jeffrey R. Babbin
                                           Mary A. Gambardella
                                           Lawrence Peikes
                                           WIGGIN AND DANA LLP
                                           265 Church Street
                                           P.O. Box 1832
                                           New Haven, CT 06508-1832
                                           (203) 498-4400
                                           jbabbin@wiggin.com
                                           mgambardella@wiggin.com
                                           lpeikes@wiggin.com

                                           *Attorneys for Defendants-Appellees*

35

**Federal Rules of Appellate Procedure Form 6.**
**Certificate of Compliance With Rule 32(a)**

**Certificate of Compliance With Type-Volume Limitation,**
**Typeface Requirements and Type Style Requirements**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

☒      This brief contains 7,085 words, excluding the parts of the brief exempted by Fed. R. App. P. 32, **or**

☐      This brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type style requirements of Fed. R. App. 32(a)(6) because:

☒      This brief has been prepared in a proportionally spaced typeface using Microsoft Office 365 in 14-point type Century Schoolbook type style, **or**

☐      This brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: October 18, 2024

/s/ *Jeffrey R. Babbin*
Jeffrey R. Babbin