*To Be Argued by Michael H. Sussman*

# 24-858

### UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

--------------------------------------------------------

DAN GIURCA,

*Plaintiff-Appellant,*

v.

MONTEFIORE HEALTH SYSTEM, INC., M.D. JEFFREY WEISS, M.D. CLAUSE VON SCHORN, M.D. GARY ISHKANIAN,

*Defendants-Appellees.*

--------------------------------------------------------

**On Appeal from an Order and Judgment of the
United States District Court for the Southern District of New York**

## APPELLANT'S REPLY BRIEF

SUSSMAN & GOLDMAN
*Attorneys for Plaintiff-Appellant*
1 Railroad Avenue, Suite 3
P.O. Box 1005
Goshen, New York 10924
(845) 294-3991 [Tel.]
(845) 294-1623 [Fax]
sussman1@sussman.law

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT ............................................................................1

ARGUMENT ...........................................................................................................3

CONCLUSION ........................................................................................................8

CERTIFICATE OF COMPLIANCE .......................................................................9

i

# TABLE OF AUTHORITIES

**Cases**

*Gleason v. Jandrucko*,
    860 F.2d 556 (2d Cir. 1988) ............................................................................6

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*,
    322 U.S. 238 (1944) ........................................................................................6

*King v. First Am. Investigations, Inc.*,
    287 F.3d 91 (2d Cir. 2002) .............................................................................5

*Kupferman v. Consol. Rsch. & Mfg. Corp.*,
    459 F.2d 1072 (2d Cir. 1972) .........................................................................6

*Marco Destin, Inc. v. Levy*,
    111 F.4th 214 (2d Cir. 2024) ..........................................................................5

*United States v. Beggerly*,
    524 U.S. 38 (1998) .....................................................................................5, 6

## PRELIMINARY STATEMENT

Appellees understandably shift blame for their own misconduct on Dr. Giurca and claim that their behavior did not constitute a fraud on the court. But, in context, this argument is fatuous and should be rejected.

As referenced repeatedly in Appellees' brief, the district court did issue an order in this case, sanctioning Appellant, and his attorney, for discovery violations. A court fully apprised of Appellees' non-compliance with its discovery obligations, something Giurca only learned when Montefiore's behavior was revealed by third parties, would have taken a quite different position in resolving the discovery issues. It would not have seen Giurca as the only offending party and place him in the position it did – pay tens of thousands of dollars to continue this litigation. But because the Court was not aware of the chicanery Appellees perpetrated, the machinery of justice was directly impacted.

Central to his case against Montefiore was its hostile response to Appellant's whistleblowing, that is his reporting the health system's alleged systemic misconduct to the New York State Department of Health. Appellees' reaction consisted of terminating Giurca for this, and only this, reason and its posting of a security alert, a barment order which featured his photograph, as if he were a common criminal, as its circulation to every Montefiore facility. Giurca later learned that Montefiore's Director of Security, Trotta, was in contact with his counterpart at

1

Orange County Regional Medical Center confirming that Dr. Giurca had been the subject of a "security alert."

Interesting, Appellees' brief does not dispute the statement of facts presented in Appellant's opening brief, that is, the chronology which contextualizes their brazen abuse of the discovery process. That abuse included, most specifically [although hardly exclusively], Appellees' effort to conceal discovery relating to the production and circulation of the defamatory security alert [JA-360], which lists him as terminated at the same time the hospital represented to the district court that he had voluntarily resigned.

Through discovery in subsequent litigation, Appellant learned that Appellees communicated about its security alert with ORMC agents, something withheld from him during the instant litigation. This contradicted Appellees' claim that it had not disseminated deprecatory information about Appellant outside of its four walls. And, more critically, during discovery in this case, though relevant to Appellant's demands, Appellees failed to reveal that its director of security told his counterpart at ORMC that the security alert was created because "Dr. Giurca wrote a letter threatening to expose the way the hospital treats they psych patients and working conditions." In response, "they didn't renew his 90-day contract and only let security know as a term employee."

In support of the instant motion, Appellant showed that Montefiore did not produce communication it received from the Department of Health dated March 27, 2017, which threatened it with serious economic loss and made more imperative discrediting Appellant, the whistleblower. Three days after receiving this letter, Appellee suspended Appellant and, within ten days, it created its bogus security alert.

Appellees argue that discovery failures and perjurious testimony cannot trigger relief under Rule 60(d)(3). In essence, these are private matters, which do not constitute cognizable fraud on the Court. But here, Appellants' counsel made material, factual representations so the court would rely upon then, claiming, for instance, that their clients had not deprecated Appellant to third parties outside of its network, at the very time documents in their clients' possession demonstrated the opposite and proved that they were engaged in defamation of him. These same lawyers filed a Rule 11 letter when they had every reason to know that their clients had information which vindicated Appellant's claims

## ARGUMENT

As was set forth in appellant's 2023 motion below and summarized it his Brief in Chief, this case is not about a single inadvertent failure to produce. Taken together, Appellees' brazen disregard of the discovery process leads to one conclusion: it sought to influence the district court to take an adverse view of

Appellant's conduct while it falsely portrayed itself as complying with its discovery obligations while it concealed information demonstrating the scope of its relationship and defamation of the appellant.

Remarkably in their 35-page brief, Appellees' counsel never dispute the breadth of the cover-up in which they engaged [which was only discovered through subsequent litigation involving a third party] and its impact on Giurca. Indeed, they never discuss the specific conduct of which Appellant accused them. They simply claim that nothing they did rose to the very high standard of conduct triggering application of Rule 60(d)(3).

On page 19 of Appellant's Brief in Chief, he summarizes the information provided by Trotta in January 2023 and explains how that information directly relates to the merits of his claims against Montefiore. He also explained what these lawyers and their clients concealed and its litigation impact. Appellees do not respond.

The parties agree that Appellant dismissed his claim, though applying the adjective "voluntary" to this action entirely decontextualizes it. Dismissal occurred for two reasons associated with Appellees' misconduct: first, the court sanctioned him and his lawyer for discovery abuses without knowing what Appellees' moving counsel were simultaneously concealing, and second, because of Appellees'

4

discovery shenanigans, his own lawyer felt he could not establish retaliation and defamation claims.

Of course, had discovery been properly provided, the second reason would not have obtained. Appellees' course of conduct was intended to and did "unfairly hamper the presentation" of Giurca's case.

To bolster their argument, Appellees cite several cases which warrant comment:

1. Judge Ramos' conclusion that this motion hinges on a single incident of discovery abuse is erroneous, meeting the standard for abuse of discretion applied in *Marco Destin, Inc. v. Levy*, 111 F.4th 214, 216 (2d Cir. 2024). As set forth in the moving papers and summarized in Appellant's Brief in Chief, Appellees engaged in ongoing and repeated withholding of relevant documents and information.

2. *King v. First Am. Investigations, Inc.*, 287 F.3d 91, 95 (2d Cir. 2002) reiterates that fraud upon the court must be established by clear and convincing evidence. There is no doubt that Appellees engaged in the conduct movant relates; comparing the discovery Appellees produced with that provided by third parties, which displays Appellees' conduct, proves this by clear and convincing evidence.

5

3. The parties agree that fraud on the court may be "perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Kupferman v. Consol. Rsch. & Mfg. Corp.*, 459 F.2d 1072, 1078 (2d Cir. 1972). Where officers of the court, as opposed to witnesses or parties, engage in fraudulent behavior, this threatens the very integrity of the administration of justice because it is the officers of the court, as opposed to any others, whose conduct reflects on the judicial system and who, in that capacity, harm not merely a single litigant by their behavior, but the system's virtue as a whole. *See Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 244-46 (1944) ("Proof of a scheme to defraud together with the complicity of the offending party's lawyers in *Hazel-Atlas* was, in the Court's judgment, conclusive evidence of fraud on the court.").

4. This is precisely such a case: Dr. Giurca is not alone violated by false representations made to the court; so is the court because it is impaired from properly performing its duties when it receives false representations and acts based upon them. Here, where a hospital has expressly retaliated against a whistleblower and its own director security has admitted the cause of its security alert – as punishment for his whistleblowing and exposing the

hospital, a gross injustice has been demonstrated. *See United States v. Beggerly*, 524 U.S. 38, 46 (1998).

5. Ironically, Appellees argue that Appellant could have sought discovery from others, citing the reasoning of *Gleason v. Jandrucko*, 860 F.2d 556, 559 (2d Cir. 1988). In *Gleason*, the civil rights plaintiff knew the identity of two witnesses, who could have made his case and did not depose them. Here, Appellees concealed their communication with the very third parties who could establish a central element of the defamation claim, publication. Appellant did not know who to depose until he brought a case against a third party and discovered that it acted against him in large part based on adverse information it received from Montefiore.

6. Plainly, the argument that the court took no action at all here is fatuous; the court's action, that is its sanction order, was pivotal and caused the "voluntary" dismissal. And, of course, that act related directly to the court's action, which, in turn was predicated in part on the misrepresentations and fraud Appellees worked.

7

## CONCLUSION

For the reasons set forth in Appellant's briefs, the order denying Appellant's Rule 60(d)(3) motion should be vacated and reversed, the voluntary dismissal vacated and this matter re-docketed in the district court.

Dated:    Goshen, New York
           November 8, 2024        Respectfully submitted,

                                                SUSSMAN & GOLDMAN
                                                *Attorneys for Plaintiff-Appellant*

                                                By:  */s/ Michael H. Sussman*
                                                          Michael H. Sussman, Esq.
                                                          1 Railroad Avenue, Ste. 3
                                                           P.O. Box 1005
                                                           Goshen, New York 10924
                                                           (845) 294-3991 [Tel.]
                                                          (845) 294-1623 [Fax]
                                                          sussman1@sussman.law

# CERTIFICATION OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 1,477 words, excluding those parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

I hereby certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word in Time New Roman 14-point type for text and footnotes.